LENOIR *v.* MINING COMPANY.

(*Knoxville.*    October  26,  1889.)

1. CHANCERY COURT.  *Increased jurisdiction under Act of 1877.  How exercised.*

Chancery Courts, in the exercise of that jurisdiction conferred upon them by Act of 1877 concurrently with the Law Courts, over cases of purely legal cognizance, will not grant relief contrary to the settled maxims and principles of equity jurisprudence, although Courts of Law would grant relief in a like case.

Act construed: Acts 1877, Ch. 97.

2. SAME.  *Same.  Ejectment Bill.  Champerty.*

Hence, a pure ejectment bill, brought by vendor and vendee jointly, will not be entertained by a Chancery Court where complainants themselves aver the champertous character of the deed made between them, and seek to recover the land in the name of the vendor for the use and benefit of the vendee.  But Courts of Law will entertain such suit upon proper pleadings.

Code cited: § 3960 (M. & V.); § 3236 (T. & S.).

Cases cited: Wilson *v.* Nance, 11 Hum., 190; A. M. Co. *v.* Vertrees, 4 Lea, 83; Nance *v.* Thompson, 1 Sneed, 327; Bank *v.* Fowlkes, 4 Sneed, 462; Fowler *v.* Nixon, 7 Heis., 729; Saylor *v.* Stewart, 2 Heis., 512; Williams *v.* Hogan, Meigs' Rep., 189.

FROM  MORGAN.

Appeal from Chancery Court of Morgan County. H. R. GIBSON, Ch.

WASHBURN & TEMPLETON for Complainants.

R. Pritchard and T. A. Wright for Respondent.

Folkes, J.  This is an ejectment bill, filed in the joint names of the children and heirs at law of A. S. Lenoir, deceased, and the husbands of the married women, and the Crab Orchard Coal Company, a corporation, for the benefit of the latter, who is the real complainant, to recover of defendant the possession of a five thousand acre tract of land, granted by the State of Tennessee to A. S. Lenoir, situated in Morgan County.

The bill alleges that several smaller tracts, also granted to Lenoir, lie within the boundaries of the said five thousand acre grant.  It is further alleged that said heirs at law and their husbands were seized in fee of the lands above mentioned, on January 1, 1887, and that "on the eighth day of February, 1887, the said heirs, their husbands joining in the deed, sold and conveyed the lands therein described to their co-complainant, the Crab Orchard Coal Company, for whose use this suit is brought; the said vendors joining because at the date of the said sale the defendant was in adverse possession of a portion at least of said land."

The defendant answering, disclaims as to certain portions of the land, and, as to the remainder, pleads the statute of seven years, averring seven years' possession under color of title, and that complainants have neglected to sue for more than that length of time.

It denies the authority to use the names of the

heirs of A. S. Lenoir for the benefit of co-complainant, the Crab Orchard Coal Company; denies that the practice of "laying a demise" in the name of the vendor for the avowed purpose of avoiding the effect and penalty of the laws against champerty is applicable or tolerable in a Court of Chancery, which looks to the substance and not to the forms of things; avers that the conveyance from the Lenoir heirs to the Crab Orchard Coal Company was made while the respondent and his vendors were holding adversely, and that neither A. S. Lenoir nor his heirs nor their vendee was ever in possession of any part of the land; avers that complainant corporation not only bought with notice of, but in recognition of and subordination to, respondent's title and possession, and that the Lenoir heirs entered into a contract in writing with the complainant corporation to that effect.

The Lenoir heirs entered into a contract of date April 2, 1883, wherein it was stipulated that said heirs are to sell and convey the five thousand acre tract involved in this suit, and other lands, not material to be mentioned, to Walter Allen or his assigns, who were therein authorized to use the names of the heirs to sue for the recovery of the lands adversely held. This agreement was assigned by Walter Allen to Crab Orchard Coal Company on October 11, 1883, and on the same date the Crab Orchard Coal Company indorsed on the said contract their acceptance in the following language:

"We accept the within option, and demand

deeds to be made to the Crab Orchard Coal Company per the terms of this option, this October 11, 1883.

"(Signed)         "A. H. GILLINGHAM, *President,*

"PHILIP S. MASON, *Secretary.*"

Subsequently, as already stated, the deed from the heirs of A. S. Lenoir was executed in strict conformity to our statute, the husbands joining in the deed with the separate examination of the wives.

It is shown in the proof by the testimony of Mr. Mason, secretary of the complainant corporation, that the Crab Orchard Coal Company was alone interested in the suit; that the possessions set up by the defendant were adverse at the time of the option, and of the deed; and that in settling for the lands of the Lenoir heirs they paid a "lumping" price.

At the hearing of this cause much learning was devoted to the effort on the one hand to sustain, and on the other to assail, the action of the Chancellor with reference to certain amendments that were sought to be made to the bill, which, under the view we have taken of this case, need not be referred to except to say that on the hearing of complainant's motion to amend his bill by having the suit stand in the name of the next friend of the married women, he refused such an amendment at that time, being of opinion that the plain intent and purpose of the option contract, and the deed made in pursuance thereof, were to

convey to another lands adversely held, to the knowledge of the vendor and vendee, in violation of the laws against champerty, and to pass to the vendee in the option contract the right to sue for lands so adversely held, and that a Court of Equity would not lend its aid to the carrying out of such champertous and unlawful agreement.

This view of the law of the case was abandoned by the Chancellor in the further progress of the cause, and it was held by him that lands adversely held, at the time of the sale and conveyance, could not be recovered by the Crab Orchard Coal Company, by reason of such deed being champertous; but that the complainants, who were heirs of A. S. Lenoir, deceased, could recover the same, notwithstanding such adverse possession at the time of the sale, and notwithstanding that such possession was for more than seven years, the disability of coverture preventing the statute from running as to such of said heirs as were married women.

From the decree, as finally rendered, both complainants and defendants have prayed an appeal and assigned errors. We propose to consider in this opinion only the assignment of errors on behalf of the respondent, which raises the question whether in a bill in equity the vendor and vendee in a champertous contract can be joined as co-complainants, and a recovery be had in favor of the champertous vendor for the benefit of the champertous vendee.

Briefly stated, the question for our decision is whether the Act of 1877, Chapter 97, giving to Courts of Chancery jurisdiction concurrent with the Circuit Courts in ejectment suits, authorizes, or makes it the duty of, a Court of Equity to adopt and give relief, under the fiction of law which in Courts of Law allows the vendor and the vendee to be joined in an action of ejectment to recover lands conveyed in a deed void under the champerty laws by reason of adverse possession at the time of the sale. That such joinder may be made in Courts of Law is well settled in this State, and we have no disposition to disturb and interfere with the adjudications so establishing. See *Wilson* v. *Nance*, 11 Hum., 190; *Augusta Manufacturing Company* v. *Vertrees*, 4 Lea, 83; *Nance* v. *Thompson*, 1 Sneed, 327; *Planters' Bank* v. *Fowlkes*, 4 Sneed, 464; *Fowler* v. *Nixon*, 7 Heis., 729; *Saylor* v. *Stewart*, 2 Heis., 512.

At law a vendee was allowed to file a count in the name of his vendor, because the deed was void and ineffectual to convey title, leaving it still outstanding in such vendor, and that the recovery at law in favor of the vendor inures to the benefit of the vendee upon the idea of estoppel in the deed. Section 3960 of the Code (M. & V.) expressly recognizes the continuance of this rule of practice, and authorizes the filing of separate counts in the name of several parties, the only difference between the old practice and the new being that, under the Code, the vendee must ob-

tain the consent of the vendor to use the latter's name.

It is doubtful whether the rule ever had an application to a case where the pleadings disclosed where the true title was. Separate counts were necessary for the several plaintiffs, and it is not decided in any of the cases that if a joint count was filed wherein the champerty was shown as between the parties so joined, recovery would be allowed even at law. See *Saylor* v. *Stewart,* 2 Heis., 510.

But be this as it may, we are of opinion, and so adjudge, that a Court of Equity will not give relief where a bill and exhibits upon their face show that the suit is being prosecuted solely for the benefit of the vendee to a champertous deed, merely because the vendee has seen proper to join as a co-complainant the vendor, it being plainly manifest that such recovery concerns alone the vendee; the allegations in the bill showing that the vendor complainants have parted with their title, and that a part of the contract was that such vendor should assist the vendee, without liability for costs to the vendor, to obtain a recovery of the land conveyed in a deed declared by positive statute to be void.

The Act of the Legislature enlarging the jurisdiction of Courts of Equity does not deprive these tribunals of the right to require, as heretofore, that parties seeking relief shall come into Court with clean hands. There is no more occasion nor

necessity now than before the passage of such
legislation, for a Court of Equity to tolerate and
encourage fictions and expedients, which have some-
times been permitted in Law Courts for the pur-
pose of avoiding the hardships of the rigid rules
of law. Even at common law, if a declaration
should show adverse possession on its face, a de-
murrer would be sustained. *Williams* v. *Hogan*,
Meigs' Reports, 189.

The Courts of Law are open, under the decisions
and precedents referred to, for the relief of those
whose title is affected by champerty, and, by
"laying a demise" in the name of his vendor in
a separate and distinct count, relief can be had at
law. It is manifestly inconsistent with every
principle of equitable jurisprudence and rule of
Chancery practice, to permit a recovery in the
name of the vendor who discloses upon the bill
and the exhibits that there is no title in him
except such as arises out of the very illegality of
his conveyance, and that the object and purpose
of the suit is to recover for the vendee, and make
effectual on his behalf a conveyance which by
positive statute is void—a statute too as wholesome
and as deserving of upholding as any to be found
upon the statute books. Courts of Equity will be
slow to adopt any fictions or tolerate any devices
of pleading whereby so wholesome a statute can
be practically nullified.

We agree fully with the learned Judge who
pronounced the opinion in *Williams* v. *Hogan*,

*supra*, that "the object and policy of the champerty laws were that those in actual possession of land should not be molested by suits founded on pretended or dormant claims, unless such suits were instituted and conducted *bona fide* by the proper owners, upon whom the law had cast the title, for their own proper benefit and at their own proper risk and cost. The buyer, in view of such purpose, it was especially important to restrain; for it was his ever-restless cupidity, stimulated by the low price of these dormant claims and by the prospect of large profits, which attacked the quiet and repose of society, and made our courts of justice the theater upon which to consummate speculations not more respectable and much more disastrous to society than those of the lottery office or gaming table."

The decree of the Chancellor, so far as it is contrary to this opinion, will be reversed. The other matters involved, as also the question of costs, are disposed of in the manner indicated in a memorandum handed counsel, and need not be repeated here.