RAILROAD *v.* JACKSON.

(*Nashville.* February 16, 1901.)

1. MASTER AND SERVANT. *Fellow-servants.*

The conductor of a freight train, accustomed and required to assist, as brakeman, in making up trains at stations, is not a fellow-servant of the depot agent, through whom the company's orders are transmitted to the conductor, and whose duty it is to keep the switch yard in safe condition, in such sense as to prevent the conductor's recovery against the company for the negligence of the depot agent in permitting a dangerous obstruction, to wit: a pinch bar, to remain upon the switch yard, whereby the conductor, while coupling and uncoupling cars, was thrown down and crushed by the train. (*Post, pp. 439–445.*)

Cases cited: Railroad *v.* Rush, 15 Lea, 145; Railroad *v.* Handman, 13 Lea, 423; Railroad *v.* Gurley, 12 Lea, 46; Railroad *v.* D'Armond, 86 Tenn., 73; Railroad *v.* Wheless, 10 Lea, 741.

2. NEGLIGENCE. *What is.*

It is negligence for a depot agent, having charge of a switch yard and required to keep it in safe condition, to fail to inspect the yard after it has been used by shippers in loading cars. before the arrival of trains. (*Post, pp. 446–449.*)

FROM DICKSON.

Appeal in error from Circuit Court of Dickson County. A. H. MUNFORD, J.

Railroad *v.* Jackson.

LEECH & SAVAGE for Railroad.

H. LEECH, J. LEECH, H. J. BOWERS, and FRANK SLEMMONS for Jackson.

WILKES, J. This is an action for damages for personal injuries. There was a trial before the Court and jury, and a verdict and judgment for $1,999.99, and the railroad has appealed and assigned errors.

The case as presented by the plaintiff in his declaration, is that he was a conductor of a freight train on the road of the defendant company, and that on reaching Slayden Station it became necessary to take into the train a car at that station. Not having a full crew of train hands, because of the desire of the company to operate the road as economically as possible, it was necessary for him to sometimes do the work of a brakeman. On this occasion he had only two brakemen, and while he was coupling and uncoupling some cars, and when he was between them for this purpose, he stepped on a pinch bar or round piece of iron that had been negligently left on the track between the rails. This caused his foot to turn, and threw him between the moving cars, which ran over his foot and crushed it so as to require its amputation. This pinch bar was used to move cars on the side track at the station when there was no engine there for the purpose.

The allegation was that it was the duty of the station agent to keep the tracks clear on the station grounds, and that he failed to perform this duty, but negligently left the bar where it caused the accident.

The contention is that this plaintiff and the station agent were not fellow servants, but were engaged in distinct and separate departments. It appeared from the proof that the conductor was required to do not only the duties appertaining to his place, but also some of those which are ordinarily done by brakemen, and this because of a scarcity of train hands.

One of the rules of the company was that station agents should have charge of and be responsible for the company's books, papers, buildings, sidings, and grounds at their respective stations, and should be responsible for the property intrusted by the company in the transaction of its business to him, and should inspect the station, buildings, and grounds daily, and see that they are in proper condition for the accommodation of passengers and the reception of freight, etc. This rule, the plaintiff insists, put upon the agent at that station the duty to see that this iron bar, which was used to move cars on the tracks in the depot yard in the absence of an engine, was kept off the tracks when not in use, and the nonperformance of that duty was negligence upon his part, which having caused the

Railroad *v.* Jackson.

plaintiff's injury, the master (in this case the defendant company) is liable.

The basic idea of the plaintiff's pleading, and which was accepted by the Court, as manifested in its charge and refusals to charge, was, that the plaintiff and the station agent were not "fellow servants, but were in distinct, separate, and different departments of service, had no association in their employment; plaintiff having no relation to or connection with said agent save to go to the station and take therefrom such cars as he might order, and to do such switching or moving of cars in the yard as he might order done."

The Court charged the jury as follows:

"The rule that an employee cannot recover for injuries caused by the negligence of a fellow-servant applies where the parties are engaged in one common work in the same department of employment, but where the employment is for separate and distinct purposes, although employed by the same person or railroad company, they would not, in the contemplation of law, be fellow-servants. As an illustration: If one person is employed to operate and run a train of cars, and the other to look after the company's property at a station, keep the yards and tracks clear of obstructions, and receive and forward freight, these positions would not be the same character and class of responsibilities as would render them

---

---

fellow-servants to that extent that the one assumes the ordinary risk of the negligence of the other," and declined to charge several requests which in different form presented the theory that the plaintiff and station agent should be treated as fellow-servants, so that the master would not be liable to either for the negligence of the other, and this presents the only real matter of controversy in this case.

We are cited to quite a number of cases from the United States which can be of little service to us in this case, as the decisions of these Courts are not in accord with our own upon the general doctrine of fellow-servants and employees in different departments. Such are the cases of *Railroad Co. v. Peterson,* 162 U. S., 346; *Railroad Co. v. Conroy,* 175 U. S., 323; *Randall v. Railroad Co.,* 109 U. S., 478; *Towner v. Chicago Railroad,* 69 Wis., 188; *Hodgkins v. Railroad,* 119 Mass., 419.

We are also cited to the case of *Railroad v. Gurley,* 12 Lea, 46. It was this: Gurley was an engineer on the road, pulling a train from Knoxville to Chattanooga, and in his run had to pass Cleveland. The rules of the company required the yardmaster at Cleveland to inspect the switches ten minutes before the arrival of each train. On this occasion the yardmaster had not inspected the switches for two hours before the arrival of Gurley's train, and one of them, a

split switch, had gotten disarranged, so that when Gurley's train arrived it was thrown on a side-track, where it came into collision with some cars, and thus caused the injuries to the engineer from which he died. The Court held, on this state of facts, that the yardmaster and Gurley, for the purpose of bringing the train safely into the station, were fellow-servants. (Page 56.)

The trail Judge charged the jury that the engineer and yardmaster were fellow-servants, and no exception was made to the charge, but it does not appear that the decision of this case rested upon that question as feature in the case.

We are also cited to the case of *Railroad* v. *Rush,* 15 Lea, 145. In that case the train to whose crew Rush belonged arrived at a station in the night time, and had to wait for a passenger train to pass. Rush was sent out on the railroad, in the direction from which the passenger train was to come, for the purpose of signaling to the engineer, that he might know a freight train was waiting for him to pass. He put his lamp down on the track, sat down on the end of the cross-ties, and went to sleep. The incoming engineer, it being dark, ran against him and injured him, and Rush sued the company. The Court said: "For another reason the statute ought not to apply. . . . We have held, and his Honor, the trial Judge, charged the jury in this case, that an employee of a railroad com-

pany, as between him and his employer, under-
takes to run all the ordinary risks of the serv-
ice, and this includes the risk of injuries from
the negligence of his fellow-servants. *Railroad* v.
*Handman,* 14 Lea, 423. Our decisions, as shown
by the citations in that case, are that several
servants, although of different grades, when em-
ployed in a common service—as an engineer and
fireman on a locomotive, or foreman of a job
and a common laborer working on a job, an
engineer and assistant fireman—are fellow-servants.
And in *Railroad* v. *Wheeless,* 10 Lea, 741, it
was held that the engineer is not the superior,
but the fellow-servant of the brakeman as mem-
bers of the crew of a railroad train. And in
*Railroad* v. *Gurley,* 12 Lea, 46, it was taken
for granted that the engineer of a passenger
train and the yardmaster of a depot, whose
duty it was to turn the switch by which the
train was to take the proper rails to reach its
stopping place at the depot, were fellow-servants
to that end. Precisely for the same reason the
engineer of such a train and the servant em-
ployed to swing a danger signal to guide the
action of the engineer in coming into the depot
are fellow-servants."

The argument is: If the yardmaster in the
Gurley case and the engineer pulling a train are
fellow-servants for the purpose of bringing the
train safely into the depot yard; and if the

brakeman of a freight train, sent out to signal an incoming passenger train, and the engineer on the latter are fellow-servants, why are the station agent in this case, who oversees the yard and tracks, and the conductor coming into the yard with his train after freight, not fellow-servants?

We are of opinion that the conductor and station agent cannot be considered fellow-servants. Their departments are entirely distinct and separate. The duty of one, the conductor, pertains to the physical moving of trains, and in this case also the coupling and uncoupling of cars when necessary. The station agent's duties did not extend to this, but only to the care of the station buildings and grounds and the transmission to the conductor of such orders as might be sent over the wires for the movement of trains. While in a certain sense both were concerned in the moving of trains, the duty of the one was confined to the physical exertion and personal oversight necessary to move the train, while the other's duties pertained alone to the transmission of any orders or directions that may have been intended for the guidance of the conductor; but the agent was not to execute such orders or aid in executing them. But in transmitting these orders he was really acting as telegraph operator, and this Court has held that such operator is not a fellow-servant with the conductor. *E. T., Va. & Ga. R. R. v. Dearmond,* 2 Pickle, 73.

---

Railroad *v.* Jackson.

---

The Court was requested to charge as follows: "If you find from the evidence in the case that plaintiff was in the employ of the defendant as conductor, and that a part of his duties was to couple and uncouple cars and to assist in such duties, and that while so employed, and while coupling cars at Slayden, he slipped and fell on a pinch bar lying between the rails of the side-track, and you further find that said bar was the property of the railroad company left in charge of the station agent at Slayden, whose duty it was to look after the depot, grounds, and tracks, and you further find that this pinch bar was used by parties loading cars on the side-tracks, and for pushing cars to convenient places for loading, and that some parties not known left this bar on the sidetrack between the rails, and that just before the arrival of the train on which plaintiff was a conductor, the station agent inspected the track, and there were no apparent defects or obstructions on the track, then the defendant is not liable."

The Court gave this charge, with the addition of the following: "But if you find, on the other hand, that the defendant's agent knew that persons were loading and unloading cars at this station before the arrival of the train, and that this company's agent did not investigate to see if the track was clear of obstructions, then the company would be liable."

Railroad v. Jackson.

The defendant company now assigns error on this action of the Court; that the request should not have been qualified, and in the same connection it is said there is no evidence to support the verdict.

It will be seen that the question presented by this request is independent of the question of fellow-servant, and the point made is that the duty of the master is not absolute, but relative only, and that only reasonable care could be exacted of the station agent, and that reasonable care was exercised in this instance. It is a matter of doubt as to who left this bar on the track. The station agent, Batson, says that the bar was used by persons having cars to load, for the purpose of pushing them along the track; that he gave instructions that it must be kept off the track, and he had never seen it on the tracks but two or three times, and then he laid it off or had it done; that he examined the yards in the morning, just before the train came in, and saw nothing on the tracks, neither the bar nor any other obstruction.

Nelson, the clerk of Batson, says: "I was clerking in Mr. Batson's store, and assisted as depot agent at the time of the accident; was at the station that day. I had the crowbar that morning, using it in moving some cars about two hours before the train arrived. I left it on the track when I got done with it, perhaps on the

rail, am not certain. The accident occurred about a hundred and fifty yards north of where I left the crowbar. Other people may have used the bar that morning. There were others working there loading staves."

Further on this witness says that he let the Hays boys have the pinch bar that morning to use in moving cars, but does not know whether it was before or after he used it. It clearly appears from other evidence that it was afterwards. The instructions of the Court applied to the facts of the case made it incumbent on the agent to see whether shippers who had been moving the cars in the yards had left the bar on the track or removed it, and the question is, Was this too great a degree of diligence to be required of the master?

We think that it was not error in the Court to give the additional instruction. The agent must have expected these shippers to use the bar, and he might reasonably presume they would leave it where they used it, and it is not shown that the agent gave any caution against leaving it. It was a very dangerous thing to have, especially if left on the rail, and would in all probability have derailed any car that struck it. It was not so dangerous left between the rails, and yet even there it was not free from danger, as is shown by the result in this case. It is described as a short iron bar, and would not appear to

Railroad *v.* Jackson.

be dangerous if merely left upon the ground, no more so than a round pebble or any other small impediment over which a man might stumble or his foot slip or turn. But the evidence of the agent himself shows that it was forbidden to be left on the tracks, so that it was evidently regarded by the company as an impediment, dangerous to be left upon it. We think that treating it in this light, as a thing dangerous to be left on the track, the company had not exercised that care that was required of it. The agent had, it is true, examined the track on the morning of the accident, but after that the Hays boys had been engaged in moving cars, and the agent should have examined to see whether they had left the bar exposed on the track.

We think, upon the evidence of the station agent himself, that he did not exercise that care that was necessary and required of him and that he knew that it was his duty to observe.

We therefore see no reversible error in the record, and the judgment of the Court below is affirmed with costs.