IN THE

SUPREME COURT OF TENNESSEE

FOR THE

MIDDLE DIVISION

NASHVILLE, DECEMBER TERM, 1924.

WILLIS & TURNER *v.* MOORE & DAVIS *et al.*

SAME *v.* YEARWOOD & MILLSTEAD *et al.*

(*Nashville.* December Term, 1924.)

1. **STATUTES.** Doctrine of "stare decisis" extended to embrace statutory construction by usage.

The principles underlying doctrine of *stare decisis* will be extended to a statutory construction which, though not directly decided, has been recognized by acquiescence and uniform adoption and practice over many years. (*Post, pp.* 566, 567.)

Acts cited and construed: Acts 1877, ch. 97.

Cases cited and approved: Toomey v. Atyoe, 95 Tenn., 373; Beatty v. Schenck, 127 Tenn., 63; Choate v. Sewell, 142 Tenn., 487; Payne v. Satterfield, 114 Tenn., 58.

Cases cited and distinguished: Palmer v. Harris, 23 Okla., 500; City of Detroit v. Detroit Ry. Co., 134 Mich., 11.

Code cited and construed: Sec. 4887(S.); Sec. 3155 (Tenn.).

(562)

2. **EVIDENCE.** Judicially noticed that right of appeal and review de novo factor in selecting forum for litigation. ·

The supreme court judicially knows that right of appeal and review *de novo* has been a determining factor in selection by counsel of forum for litigation. (*Post, pp.* 567-569.)

Cases cited and approved:· Toomey v. Atyoe, 95 Tenn., 377; Beatty v. Schenck, 127 Tenn., 63.

Case cited and distinguished: Folwell v. Laird, 59 Tenn., 464.

3. **COURTS.** Long-followed rule of procedure not departed from unless statute invoked clearly requires.

A firmly established and long-followed rule of procedure should not be departed from unless it is clear that statute invoked so requires. (*Post, p.* 569.)

4. **APPEAL AND ERROR.** Right to trial de novo on appeal from chancery court upheld, though legal question involved.

In view of long-established custom of having trial *de novo* on appeals from all decrees in chancery courts, as provided in Shannon's Code, section 4887, and confusion that would result if this rule were adopted, *held*, that supreme court will construe such statute, so as to require trial *de novo* on appeals from chancery court, in cases involving legal questions, of which chancery courts have concurrent jurisdiction with circuit courts under Acts 1877, chapter 97, where suit is brought in equity and tried according to forms of chancery practice. (*Post, pp.* 569-574.)

Acts cited and construed: Acts 1831, ch. 49, sec. 1; Acts 1819, ch. 31.

Cases cited and approved: Lenoir' v. Mining Co., 88 Tenn., 168; Sartain v. Dixie Coal & Iron Co., 150 Tenn., 646.

Cases cited and distinguished: Maskall v. Maskall, 35 Tenn., 208; Smith v. Holmes, 59 Tenn., 468; Nashville Ry. & Light Co. v. Bunn, 168 F., 862.

Code cited and construed: Secs. 3155, 4887, 4907 (S.), Sec. 3172 (Tenn.).

FROM LINCOLN.

Appeal from the Chancery Court of Lincoln County. —Hon. Thos. B. Lytle, Chancellor.

Giles L. Evans, for complainants.

Lamb & Lamb, for defendants.

Mr. Justice Chambliss delivered the opinion of the Court.

These suits, heard together, were brought in the chancery court to recover the value of mules alleged to have been converted to the use of defendants. From the chancellor's decree in favor of complainants, appeal was taken to the court of civil appeals. That court in a forceful opinion by Mr. Justice Faw, speaking for a majority of the court, has found that, while the suits were brought in equity and tried according to the forms of chancery practice, they were actions at law, of which the chancery court had jurisdiction concurrently with the circuit court only by virtue of the Act of 1877, chap. 97; but were not "in a matter of equity," as to which trial *de novo* may be had on the appeal provided for by our statute. Shannon's Code, section 4887. So finding, that court declined to consider the preponderance of the evidence, but holding, according to the practice on appeals in the nature of writs of error from the lower courts, that there is material evidence to support the chancellor,

has affirmed his decree.  Petitioners here challenge this holding in this important matter of procedure as an erroneous construction of the pertinent statutes and as contrary to the practice heretofore approved and followed.

It is said that appeals authorizing a review of the facts *de novo*, that is calling for a determination of the preponderance of the evidence, are had alone by virtue of our statute, brought into Shannon's Code as section 4887 from the Code of Tennessee, section 3155, which reads as follows:

"Either party dissatisfied with the judgment or decree of the circuit or chancery court, in a matter of equity tried according to the forms of the chancery court, may appeal to the supreme court, and have a re-examination, in that court, of the whole matter of law and fact appearing in the record."

The insistence, plausibly and forcefully made, is that the statute makes no distinction between the circuit and chancery courts, but applies to a designated class of cases, only, in whichever court tried, and that—"In order that a case may fall within the statute and be entitled to be heard *de novo* on appeal, two facts must concur, viz.: (1)  It must be 'a matter of equity' (that is, a case falling within the domain of equity jurisprudence), and (2) it must have been 'tried according to the forms of the chancery court.' "

While conceding that the precise point has not been heretofore decided by this court, or by the court of civil appeals, reliance is had upon *Toomey* v. *Atyoe,* 95 Tenn., 373, 378, 32 S. W., 254; *Beatty* v. *Schenck,* 127 Tenn., 63,

152 S. W., 1033; *Choate* v. *Sewell,* 142 Tenn., 487, 221 S. W., 190; and *Payne* v. *Satterfield,* 114 Tenn., 58, 84 S. W., 800, as in harmony with and to some extent, at least, supporting the conclusion announced that the well-settled rule of practice applicable to appeals from circuit courts in the nature of writs of error must be applied to a case tried in the chancery court according to the forms of that court—unless ''a matter of equity'' is involved.

A question of much importance is thus presented. Affirmance of this holding involves a departure from a practice which has been followed uniformly for the half century since concurrent jurisdiction was conferred in certain law cases upon the chancery court. A change so radical calls for serious consideration. Conceding that the question has not been directly decided, and that the doctrine of *stare decisis* is not therefore in strictness controlling, the principles underlying that doctrine would seem to warrant the extension thereof to a construction which, although not directly decided, has been recognized by acquiescence and uniform adoption in practice over many years. The phrase *stare decisis, et non quieta movere*—to stand by precedents, and not to disturb settled points—would appear to embrace important questions of practice established by long custom. In 7 R. C. L., p. 1003, it is said, citing *Palmer* v. *Harris,* 23 Okl., 500, 101 P., 852, 32 L. R. A. (N. S.), 401, 138 Am. St. Rep., 822, that—''A well-settled rule of practice which has been silently acquiesced in, will not be set aside where it would probably cause great inconvenience and confusion in the practice, and where it can easily be

changed by the legislature, if there is any necessity therefor."

In *Palmer* v. *Harris*, supra, the rule in question related to the issuance by trial courts of a *supersedeas* pending an appeal. Finding that that rule of practice had been generally followed by the courts of the State, the court said:

"While its correctness has never been brought to the attention of this court heretofore, it has been silently acquiesced in, and we think that it has become a too well settled rule of practice in this State to justify this court in making an extensive examination to ascertain whether it is supported by the weight of authorities, since to set it aside at this time would probably cause great inconvenience and confusion in the practice."

And in a footnote the annotator, under the heading *stare decisis*, says:

"A long-continued practical interpretation of a law by the courts of the State should be regarded as binding" —citing *City of Detroit* v. *Detroit Ry. Co.*, 134 Mich., 11, 95 N. W., 992, 99 N. W., 411, 104 Am. St. Rep., 600.

In the course of a discussion of the doctrine of *stare decisis, in* 7 R. C. L., p. 1009, it is said that—"In questions of practice a close adherence by a court to its own decisions, even though it may at times have erred, or decided differently from settled adjudications upon the subject, is necessary and proper for the regularity and uniformity of practice, and that litigants may know with certainty the rules by which they must be governed in the conducting of their cases."

This court judicially knows that the right of appeal and review *de novo* has been a determining factor in the

selection by counsel in this State of the forum for litigation, and that today many causes are pending in the chancery court brought in that court with this long-recognized right in contemplation. Among the maxims compiled by Broom is *cursus curle est lex curle*—"the practice of the court is the law of the court"—and the learned author thus comments:

"Where a practice has existed it is convenient, except in cases of extreme urgency and necessity, to adhere to it, because it is the practice, even though no reason can be assigned for it; for an inveterate practice in the law generally stands upon principles that are founded in justice and convenience."

A principle so founded underlies the rule long established and followed governing the disposition of cases coming before this court in relation to the matter now under discussion. The "any material," rather than the "preponderance of," evidence rule was first applied in jury cases mainly because the jury saw and heard the witnesses and thus occupied a strongly presumptive vantage point of view. More than fifty years ago NICHOLSON, C. J., in *Folwell* v. *Laird*, 12 Heisk., 464, extended the rule to those cases in which the presiding judge was substituted for the jury, saying that—"The same reasons which give weight to the verdicts of juries operate alike in support of the action of the judge in cases submitted to him on the facts."

And this rule has been since consistently followed. In *Toomey* v. *Atyoe*, 95 Tenn., 377, 379, 32 S. W., 254, the rule was applied to chancery causes in which a jury is demanded and then waived. And this court has declared

this rule in large measure applicable to cases tried before a chancellor on oral testimony, whether a formal substitution for a jury or not, recognizing that the reason applies equally, the trial court having had the opportunity to see and hear the witnesses. This was the holding in *Beatty* v. *Schenck,* 127 Tenn., 63, 152 S. W., 1033, and approved in recent unreported cases. The reason underlying the limitation of review in this court of the facts has thus far been consistently followed. We are now asked to abandon the reason, and adopt a construction of this statute providing for appeals which extends the limitation to all law cases heard in the chancery court, although on depositions only. For reasons already suggested and others to be mentioned, while fully appreciative of the saving to the appellate courts of time, labor, and responsibility, incident to such a departure from the present practice, we are constrained to decline so to do.

Certainly a firmly established and long-followed rule of procedure should not be departed from, unless itis altogether clear that the statute invoked so requires. Conceding the plausibility of the construction of the Code section, supra, by the learned justice, in this opinion speaking for the court of civil appeals, it is not clear that broad appeals are thereby limited as held.

The right to a trial *de novo* in this court on appeal from the chancery court did not originate with the code, section 3155 (Shannon's Code, section 4887, above quoted), nor with the Act of 1831, chapter 49, section 1. It was said in *Maskall* v. *Maskall,* 3 Sneed, 208, decided in 1855, that—"By the Act of 1819, chapter 31, it is provided that if an appeal is taken from the chancery to the supreme

court, the cause shall be tried as if it had originally commenced in the supreme court"—that is, *de novo*.

But while the Act of 1831, chapter 49, seems to have conferred the right of appeal on "the circuit court sitting as a court of equity," and prescribed the terms on which such appeal should be granted, it merely recognized and confirmed a right already existing as to the chancery court. This act was entitled "act act to amend the laws now in force regulating appeals in equity," and section 1 reads as follows:

"Where any party shall apply for an appeal from the final judgment or decree of the court of chancery, or the circuit court sitting as a court of equity, to the supreme court of Errors and Appeals, it shall be the duty of the inferior court, to grant such appeal on such appellant entering into bond," etc.

No reference is made in the act to the right to a re-examination of the law and facts on the appeal, expressly referred to in the Code section. This had long been an incident of all appeals from the court of chancery. It would seem that the reference in the Code section to this matter was rather a recital in recognition of the rule of practice on "appeals" long established, than a creation of the right. In other words, the Code section perpetuates the right of appeal from both courts, conferred, as to "the circuit court sitting as a court of equity," by the act of 1831; and in definition of the effect of such appeal adds the statement that on such "appeal" a re-examination of the whole record is had.

Looking further to the history or statutory basis of Code, section 3155, as may properly be done in constru-

ing the language employed, it will be seen not only that an incident of appeals from courts of chancery had been theretofore, certainly since the act of 1819, and probably before that statute, a trial *de novo*, but that the distinction sought to be emphasized in construction of the statute now in the Code was certainly not made in the basic act of 1831. That act speaks of "an appeal from the final judgment or decree of the court of chancery, or the circuit court sitting as a court of equity," and from either court "in a matter of equity tried according to the forms of the chancery court."

In this connection it will be noted that the section 4907 of Shannon's Code regulating appeals in the nature of writs of error, being Tennessee Code, section 3172, reads as follows:

"An appeal in the nature of a writ of error lies, at the instance of either party, from the judgment or decree of the court of chancery, or of the county or circuit court in equity, causes, in all cases, tried according to the forms of chancery." etc.

Now considering the distinction between the courts thus classified in the act of 1831, and in the Code section just quoted, the conclusion is reasonable that the phraseology employed in section 4887, supra, is inapt, and that no such classification was intended as insisted upon; that is, between the nature of the litigations, rather than the court from which the appeal comes. The Code section reads:

"Either party dissatisfied with the judgment or decree of the circuit or chancery court, in a matter of equity tried according to the forms of the chancery court, may appeal," etc.

Now this section was framed long before the act of 1877 conferring jurisdiction in law cases on the chancery court, and long before causes were tried in the chancery court otherwise than according to the forms of this court, this practice being a modern innovation; and it is therefore reasonable to assume that the words ''in a matter of equity tried according to the forms of the chancery court'' were intended to modify and relate to the ''circuit'' court only. This modifying or qualifying matter was appropriate to, and therefore has natural application alone to, the circuit court.

Again, while not authoritative as decisions of this precise question, because not the issue, frequent general statements to be found in our cases are persuasive that our courts have regarded all appeals from the chancery court, when tried according to the forms of that court, as bringing the causes here for trial *de novo*. For example, in *Smith* v. *Holmes*, 12 Heisk., 468, Chief Justice NICHOLSON said:

''A simple appeal from the chancery court to the supreme court secures a trial *de novo* in the supreme court, the same as if the suit had originally commenced there.''

In a note to section 21 of Gibson's Suits in Chancery (2d Ed.), the learned author calls attention to the fact that in *Lenoir* v. *Mining Co.*, 88 Tenn., 168, 14 S. W. 378 (approved in recent case of *Sartain* v. *Dixie Coal & Iron Co.*, 150 Tenn., 646, 266 S. W., 313), ''it was decided that when a suit based on claims purely legal is tried in the chancery court the maxims and principles of equity will be applied;'' and it would seem to follow that the rules of practice, such as the manner and extent of the review on appeal, would likewise apply. In the text of

the section cited it is said that parties coming into that court by authority of the act of 1877 should not be "denied any equitable right, benefit or privilege, accorded by the court in the ordinary exercise of its jurisdiction," and that, "in all suits brought under the act of 1877, the pleadings, practice and principles of equity jurisprudence will control."

And, too, the rule of practice on appeals in the federal courts has application. Where a claim for tort is decreed on an intervening petition filed in a foreclosure suit pending "in equity," it is held that the fact "that the subject-matter of the interventions was a tort does not deprive the judgment of its status as a judgment in an equity case, for the character of the principal suit gives color to every judgment and decree pronounced in that case." *Nashville Ry. & Light Co.* v. *Bunn* (C. C. A. Sixth Cir.), 168 F., 862, 94 C. C. A., 274. And says Mr. Justice LURTON, speaking for that court:

"A court of equity not infrequently finds itself called upon to determine purely legal questions, sometimes arising under the matter of the original bill and sometimes arising upon an intervention. The practice in both is the same. . . . Manifestly, it follows that the subject-matter of a judgment or decree in a court of equity has no function in determining the method of revising such judgment. It is, after all, nothing more or less than a judgment or decree in an equity case, and can be revised only by the procedure under which judgments and decrees of an equity court are revised."

It was held that the case should have been brought upon an appeal opening the whole record to review, as in cases in equity, and not by writ of error.

The pertinent point of the holding is that litigation brought in an equity court, although involving law questions, in so "in equity" as to call for the application of the rules of procedure, with special reference to appellate review, applicable to suits in equity. The suits in the instant case, although based on legal, rather than equitable claims, in the chancery court only by virtue of the statute giving to that court concurrent jurisdiction, were nevertheless brought in equity and the judgments or decrees are subject to review here only on "appeal," carrying with it the right of trial *de novo*.

In conclusion, as a matter of practical results, it must be conceded that adoption of a different rule would create confusion growing out of recurrent doubt and difference of opinion arising in various cases as to whether the given case was one "in law" or "in equity;" the line of demarcation, always shadowy and debatable, growing more and more indistinct under local modern practice. The character and extent of the hearing on appeals from the chancery court would be a constantly arising and disputed issue, and the ancient controversy with respect to "where the elastic domain of equity really ended, and where the rigid realm of law inviolably began," which the act of 1877 did much to eliminate, would be revived.

The decree of the court of civil appeals will be reversed, and the cause remanded to that court for its adjudication upon "the whole matter of law and fact appearing in the record."