Nelle W. Carpenter *v.* Sidney B. Wright.

(*Nashville.* December Term, 1928.)

Opinion filed January 21, 1929.

LOWNDES TURNEY, FLOYD ESTILL and BROWN & SPUR-
LOCK, for complainant, appellant.

SAMUEL B. SMITH and SIZER, CHAMBLISS & SIZER, for
defendant, appellee.

MR. CHIEF JUSTICE GREEN delivered the opinion of the
Court.

*(1)* The complainant, Mrs. Nelle W. Carpenter,
brought this suit against her father, Sidney B. Wright,
to recover the proceeds or the value of certain property
alleged to have belonged to her, which property she
charges was converted by her father and her mother, now
deceased. The suit is treated by her counsel as one of
*indebitatus assumpsit* brought in the chancery court un-
der chapter 97 of the Acts of 1877. There was a decree
for the defendant by the Chancellor, which the Court
of Appeals affirmed. The writ of *certiorari* was granted
by this court and the case has been elaborately argued
and briefed here.

The complainant is a granddaughter of the late Seth
B. Moe, of Chattanooga, who died June 1, 1917. He left
surviving him two daughters, Mrs. Mae Moe Wright, the
mother of complainant, and Mrs. Helene Moe Sale. The
grandfather left a will under which his estate was di-
vided between his two daughters. On July 16, 1919, the
two daughters sold the property involved in this suit
for $40,000 cash and divided the proceeds between them-
selves. The defendant, Sidney B. Wright, promoted this
sale and acted for his wife in the reinvestment or expen-
diture of her share of the proceeds.

Mrs. Mae Moe Wright, the mother of the complainant,
died about October 27, 1921, intestate, according to the

original bill, possessed of a considerable estate. It appeared from the bill that the defendant, Sidney B. Wright, was in possession of this estate, claiming the personalty as surviving husband, and the realty as tenant by the courtesy.

The bill set out that prior to his death, the complainant's grandfather had conveyed to his daughters, Mrs. Mae Moe Wright and Mrs. Helene Moe Sale, reserving a life estate in himself, certain real estate in Chattanooga; that this conveyance to the daughters was in trust for their children "at such time or dates as such named children shall respectively arrive at the age of (25) twenty-five years, or to their legitimate successors by descent in fee simple," the trustees to have the use and enjoyment of the property until the grandchildren should reach the age of twenty-five years, respectively.

The bill averred that said conveyance was duly executed by the grandfather and delivered to Mrs. Mae M. Wright, the mother of the complainant, but that said deed was suppressed by Mrs. Wright and was found by the complainant among her mother's papers after the death of the latter. A paper writing of the tenor above described was filed by the complainant as an exhibit to her bill. It appeared to have been signed by her grandfather. It was, however, not dated nor acknowledged. A blank form of acknowledgment appeared on the instrument, which had not been filled out and likewise the date line and lines for the signatures of witnesses were left blank.

The bill sought to recover the value of complainant's interest in said real estate under said deed from the defendant, individually or as surviving husband, it being charged that he was personally liable as having aided in

the diversion of the trust fund, and that complainant moreover was entitled to follow the proceeds of her share of this real estate into her mother's estate then in possession of her father. Other relief of an equitable nature was prayed, which it is not necessary to notice now.

The defendant answered the bill and denied that the conveyance upon which the suit was founded was ever in fact executed or delivered by complainant's grandfather or that said conveyance was intended to be effective. It was contended, in substance, by the answer that the paper writing above mentioned was merely a tentative draft of a conveyance which the grandfather thought of making; that it was submitted to his daughters, not approved by them, and abandoned. Other statements were in the answer, which we may omit restating here.

Later an amended and supplemental bill and other pleadings were filed in the case, the details of which we likewise find it unnecessary to set out.

A jury was demanded by the complainant and certain issues submitted. The jury found that (1) the grandfather did sign the purported deed of trust; (2) that he did deliver the deed of trust into the hands of Mrs. Mae Moe Wright; (3) that the delivery was made during 1915 or 1916; (4) that defendant Sidney B. Wright knew of the existence of said deed of trust when the property conveyed by it was sold; (5) that at the time of said sale the said Sidney B. Wright knew that said trust deed was or had been in the possession of Mrs. Mae Moe Wright; (6) that said Sidney B. Wright did not receive and apply to his own account the proceeds of the sale; (7) that Nelle W. Carpenter was born November 30, 1893.

The case was tried at the January, 1927, term of the Hamilton County chancery court. The verdict of the

jury was returned on February 25, 1927. By different orders the time of defendant for the entry of a motion for a new trial was extended. On March 25, the defendant filed with the clerk of the court a motion for a new trial. No motion for a new trial was spread upon the minutes of the court, nor was any entry made upon the minutes showing that a motion for a new trial had been filed, during the January, 1927, term, the term at which the case was tried.

(2) The January term adjourned on April 2 and on that day an order was entered allowing the defendant sixty days from and after the adjournment of that term of the court in which to prepare and fill a bill of exceptions.

During the month of April, 1927, at the term succeeding the trial term, the motion for a new trial was called up. The Chancellor was of opinion that, no motion for a new trial having been spread on the minutes and no entry having been made on the minutes showing that a motion for a new trial was filed during the trial term, he was without power to consider the motion for a new trial presented to him as aforesaid. The Chancellor, however, was of opinion that the complainant's suit should be dismissed on account of her laches, and no issue of laches having been submitted to the jury, he felt free to pass on this question and entered a decree dismissing the bill for this reason. Subsequently he allowed a bill of exceptions presented within sixty days of the order made on the last day of the trial term.

The complainant appealed from the Chancellor's decree to the Court of Appeals and the defendant filed the record in that court for writ of error. A motion to strike the bill of exceptions was made and allowed by the Court

of Appeals but that court, acting on a written finding of facts which the Chancellor had made, agreed with him that the defense of laches was good, and affirmed his decree dismissing the bill.

The action of the Court of Appeals in striking the bill of exceptions is assigned for error upon defendant's petition for *certiorari* and we think that action of the learned court was erroneous.

If it be conceded that the Chancellor properly held that he could not consider the motion for a new trial under the circumstances of the case, nevertheless, the bill of exceptions does not go out with the motion for a new trial. As above stated, an order was entered on the minutes of the last day of the trial term granting the defendant sixty days in which to prepare and file his bill of exceptions.

Chapter 275 of the Acts of 1899 carried into Thompson's-Shannon's Code at section 4693a and section 4693a1 is as follows:

"In all cases of appeal, and appeal in nature of writ of error from the circuit and chancery courts to the Supreme Court, the judge or Chancellor may, in his discretion, allow the parties time in which to prepare and file the bill of exceptions, not to exceed thirty days from and after the adjournment of the court.

"Bills of exception signed by the court, and filed under section 1 of this act (Code, sec. 4693a), after the adjournment of the court for the term, shall be made and become a part of the record in the cause in which it may be filed as fully and to all intents and purposes as if signed by the court and filed before the adjournment of the court. (1899, ch. 275, sec. 2.)"

This statute was considered by the court in *Rhinehart* v. *State*, 122 Tenn., 698, and *Dunn* v. *State*, 127 Tenn., 267. It was shown in these cases that under the *statute* the bill of exceptions did not depend on the entry or upon the disposition of the motion for a new trial. The motion for a new trial made at the trial term, could be disposed of at a subsequent term. It was, however, necessary that the bill of exceptions be filed at the trial term or within thirty days thereafter, by permission granted at the trial term, under this statute.

The conditions attendant upon the filing of a bill of exceptions were thus stated in *Dunn* v. *State, supra;*

"The periods, then, during which a bill of exceptions may be lawfully filed, are these: (1) During the whole of the ordinary term of the court at which the cause is tried, if there be no order of that court fixing a shorter period within the term; (2) during such special period fixed by the court within the ordinary term if there be any such period fixed; (3) during any period not exceeding thirty days after the adjournment, which the judge may grant on his minutes prior to adjournment; (4) during any extension of the term, while such extension is still running and not adjourned to court in course; (5) or within thirty days after the final adjournment supervening the extension, if such time be granted by the judge by order on his minutes before final adjournment."

Chapter 49 of the Acts of 1917 amended chapter 275 of the Acts of 1899 so as to extend the period during which a bill of exceptions might be filed by permission of the court to sixty days after adjournment of the trial term.

All this was again considered by the court in *National Refining Company* v. *Littlefield*, 142 Tenn.. 689.

298

*(3)* Under chapter 157 of the Acts of 1919 and chapter 72 of the Acts of 1921, the right to a bill of exceptions is made dependent on a motion for a new trial. These statutes cover cases where the disposition of a motion for a new trial is carried over to a subsequent term and then permit a bill of exceptions to be taken within thirty days after said motion for a new trial shall be finally disposed of. The two later statutes, however, apply only to cases in the circuit and criminal courts and do not apply to cases in the chancery courts. They provide a supplemental method for taking a bill of exceptions in the law courts.

*(4)* Since the bill of exceptions is properly a part of the record, it becomes our duty to examine the proof and to ascertain if the Chancellor's decree dismissing the bill for laches was well founded on such proof. As heretofore pointed out, no issue involving laches was submitted to the jury. The Chancellor regarded the question of laches as determinative and, such being his view, he properly proceeded to dispose of the case on that ground without reproach to the verdict. This practice is well sustained by our cases. *Gass* v. *Mason,* 36 Tenn. (4 Sneed), 509; *Ragsdale* v. *Gossett,* 70 Tenn. (2 Lea), 729; *Cooper & Stockell* v. *Stockard,* 84 Tenn. (16 Lea), 140.

*(5)* On appeal, there being no finding of the jury on this question, it is to be considered *de novo* as any other question arising on an appeal in equity. *Nichols* v. *Cecil,* 106 Tenn., 445.

The application or motion of the defendant for a decree in his favor was not a motion for a decree or judgment *non obstante veredicto* and *Citizens Trust Company* v. *Motor Car Company,* 154 Tenn., 507, is not in

point. That was a jury case in the chancery court in which it was sought to employ a motion *non obstante veredicto* to perform the office of a motion for a new trial grounded on the theory that there was no evidence to support the verdict of the jury. The argument was that a motion *non obstante veredicto* could be used to test the sufficiency of the evidence upon which the verdict was based. This court held such a motion could only be granted upon the record, that its office was to test the pleadings, not the proof. The motion or application of the defendant herein for a decree in his favor was not a motion *non obstante veredicto* nor was it a motion for a new trial. Defendant's motion conceded the sufficiency of the pleadings and conceded the effect of the verdict of the jury. It rested on the theory that the issue submitted to the jury were not determinative and that defendant was entitled to a decree on the whole proof, admitting that the jury correctly found the issues left to them. This practice is common in chancery and nothing in *Citizens Trust Company* v. *Motor Car Company, supra,* reflects upon such practice.

In *Cooper & Stockell* v. *Stockard, supra,* speaking of a jury in chancery, the court said:

"They return no verdict in favor of the plaintiff for the money or thing sued for; but say such and such allegations or propositions are true or false. Then the Chancellor, if he allows the verdict to stand, considers the facts found as true and tries and determines the rights of the parties as he deems just and right, in view of the facts found. In other words, the jury report their opinion upon the questions submitted to them, and the Chancellor tries and determines the suit between the

parties upon the facts reported, and other facts before them, and the law governing the case."

(6) A motion for a new trial.is not necessary to review the action of the Chancellor upon evidence which does not bear on issues submitted to the jury. To that extent a jury case in chancery is reviewed *de novo* on appeal. Although a case be heard on oral evidence in chancery, insofar as such hearing is "according to the forms of the chancery court," the whole matter of law and fact is re-examined upon appeal without the necessity of a motion for a new trial. *Watkins, Trustee,* v. *Sedberry,* 155 Tenn., 148.

(7) We come then to consider the propriety of the Chancellor's decree dismissing the bill on the ground of complainant's laches.

It appears from her testimony that she knew of the existence of the instrument upon which she founds this suit as early as the year 1916. Her grandfather died in June, 1917, and the life estate, which he had reserved, terminated. She was entitled to take under this instrument when she became twenty-five years old and she reached that age in November, 1918. Her mother and her aunt partitioned the property involved in January, 1918, and, from the finding of the lower courts, it appears that complainant knew of this partition at the time and that her mother and her aunt claimed the property as their own. Her mother sold her interest in the land in July, 1919, converting it into money. The complainant knew about this. The mother lived until October, 1921. Although the complainant had been twenty-five years old for about three years, prior to her mother's death, and was aware that her mother was asserting ownership of the interest here involved, had partitioned

it and sold it and dealt with it as absolutely hers, the complainant uttered no word of protest. Complainant testified "I did not know but what everything would be alright; I had no reason to doubt I would not get everything that was coming to me; . . . I certainly felt that I would get mine; I felt that I would get the whole of it and I had no reason to think otherwise." Complainant was asked:

"But you took no steps of any kind?" She answered: "Not until after my mother died, then I expected to set up this deed."

In other words, the complainant deliberately refrained from making any claim under the instrument sued on until after her mother's death and until she could learn what she would get under her mother's will. Then being disappointed, complainant started litigation.

As heretofore stated, the so-called trust deed, on its face, appeared to be incomplete. It was signed but the maker had evidently intended to date it, to have it witnessed, and to acknowledge it. Blank lines left for the signatures of witnesses and for the date were not filled out, nor were the blank lines left in the acknowledgment form for the name and signature of the notary public and for the date filled out. Defendant denied that the instrument had been executed and delivered.

It was found among the papers of Mrs. Mae Moe Wright. Mrs. Wright could have explained the whole situation. So far as we can see, no other person could have told the history of this document, after the death of the grandfather and perhaps the other daughter. Mrs. Wright could have accounted for her possession of this paper and could have testified whether her father re-

garded it an executed conveyance and intended to deliver it to Mrs. Wright as trustee.

The complainant is in the attitude of having purposely delayed making her claim until the only witness who could thoroughly refute that claim had died. All the while complainant stood by in silence and saw others deal with the property as their own, when good faith required her to speak if she ever intended to make a claim. We agree with the courts below that her lips should now be closed.

The bill in this case was not filed until June 3, 1925. In another month six years would have elapsed from the time the asserted interest of complainant was sold and the proceeds thereof appropriated by Mrs. Wright. Before bringing this suit the complainant instituted proceedings to contest the will of her grandfather by which he divided his estate between his two daughters, her idea being to set up an earlier will in which she claimed her grandfather had left his estate to his daughters for life with remainder to his grandchildren. These proceedings were abandoned.

(8) It is insisted for complainant that this is nothing but a suit at law for the value of her property converted and that she cannot be repelled by any application of the doctrine of laches, but that her right to sue can only be determined by the six years' Statute of Limitations. The argument is that the defense of laches is not available against a legal demand asserted in the chancery court under chapter 97 of the Acts of 1877, but that such a defense is only available against equitable demands.

On the subject of laches, this court has said:

"Relief is generally refused by courts of equity, because of the lapse of time, only in such cases where the

loss of evidence, death of witnesses or parties, and failure of memory resulting in the obscuration of facts to the prejudice of the defendant, render uncertain the ascertainment of truth, and makes it impossible for the court to pronounce a decree with confidence." *Evans* v. *Steele,* 125 Tenn., 494.

To the same effect was *Bolton* v. *Dickens,* 72 Tenn. (4 Lea), 569.

It has been frequently decided that a statutory period of limitation of equitable actions does not amount to a direction that no shorter period shall be a bar to relief in any case, "and does not preclude a denial of relief, for unreasonable delay, in accordance with equitable principles." 10 R. C. L. 407; *Evans* v. *Moore,* 247 Ill., 60, 139 Am St. Rep., 302; *Dugan* v. *Gittings,* 3 Gill (Md.), 138, 43 Am. Dec., 306; *Calhoun* v. *Delhi & Middletown R. Co.,* 121 N. Y., 69, 8 L. R. A., 248. See cases collected in Note 23 Am. St. Rep., 149.

The reasoning of the cases is well presented by the New York Court of Appeals, in which State there is a Statute of Limitations of ten years applicable to equitable actions. The court said:

"In the present case the cause of action for the cancellation of the bonds was not barred by the ten years' Statute applicable to equitable actions. But a period of nine years had elapsed after the bonds were issued, before the commencement of the action. But we apprehend that the period of limitation of equitable actions fixed by the Statute is not, where a purely equitable remedy is invoked, equivalent to a legislative direction that no period short of that time shall be a bar to relief in any case, or preclude the court from denying relief in accordance with equitable principles for unreasonable de-

lay, although the full period of ten years has not elapsed since the cause of action accrued. The ten years' limitation was primarily designed to shield defendants (*Buffalo & N. Y. C. R. Co.* v. *Dudley,* 14 N. Y., 352), and it must be true that a court, in the exercise of its equitable jurisdiction, could not entertain or enforce a cause of action barred by the Statute, and not within any exception, acting upon any general equitable considerations. But in enforcing purely equitable remedies, depending upon general equitable principles, unreasonable and inexcusable delay is an element in the plaintiff's case which a court of equity always takes into consideration in exercising its discretion to grant or refuse relief, and is not a mere collateral incident. Where there is a remedy at law whereby the plaintiff can prosecute or defend his legal right, the refusal of relief leaves the parties where they were.'' *Calhoun* v. *Delhi & Middletown R. Co., supra.*

(9) The Statutes of Limitations in Tennessee are so framed as to bar the prosecution of all suits, legal or equitable, with a few exceptions. *Alvis* v. *Oglesby,* 87 Tenn., 172; *Hughes* v. *Brown,* 88 Tenn., 578; *Alsobrook* v. *Orr,* 130 Tenn., 120. Nevertheless we think that the right of a defendant in equity to resist relief sought against him on the ground of long delay, although short of the statutory period of limitation, is in the nature of defense and is not taken away from him by such statutes. The statutes confer an additional defense.

(10) We think it is now regarded as a settled rule in suits in the chancery court, although they be suits cognizable in the law courts and brought in the chancery court under chapter 97 of the Acts of 1877, that maxims and principles of equity will be applied.

In *Lenoir* v. *Mining Company*, 88 Tenn., 168, an ejectment bill was filed in the chancery court by a vendor and his vendee jointly to recover the land in the name of the vendor for the use of the vendee. Champerty was apparent and this court dismissed the bill, although such a suit was maintainable at law upon a declaration with one count in the name of the vendor and one count in the name of the vendee. The complainants, not coming into court with clean hands, were denied relief.

Chancellor GIBSON understood this case as deciding "that when a suit based on claims purely legal is tried in the chancery court, the maxims and principles of equity will be applied." Gibson's Suits in Chancery (2 Ed.), sec. 21, Note 51. This view of *Lenoir* v. *Mining Company*, was quoted and expressly approved by this court in *Willis & Turner* v. *Moore & Davis*, 151 Tenn., 562.

In *Sartain* v. *Dixie Coal & Iron Company*, 150 Tenn., 633, the court dismissed a replevin suit brought in the chancery court under the Act of 1877, because the complainant did not come in with clean hands and did not do equity. Speaking through that accomplished scholar in equity, Special Justice THOMAS H. MALONE, the court said:

"The complainant, for his own purposes, sought the aid of the chancery court in his replevin suit, instead of bringing an action at law. He might have had an injunction or any other extraordinary relief by proper averments. The relief afforded in equity was far superior to that at law. Having thus sought the assistance of a court of equity, he could not be heard to dispute its fundamental maxims. Whether the plaintiff comes under the original or under the statutory jurisdiction of the chancery court he must come with clean hands, and

must, in a proper case do equity.'' *Sartain* v. *Dixie Coal & Iron Co., supra.*

In the case before us, the complainant, by her bill and her amended bill in addition to the value of her property alleged to have been converted, sought various forms of equitable relief. She sought to follow a trust fund to set aside as fraudulent a will, to set up an earlier will, to have an accounting and asked for a receiver. It is to be doubted if the relief which she now claims was the principal relief sought, and gave character to the suit, was not rather incidental.

We think it would be out of the question for the court of chancery in Tennessee to forego the application of its established principles merely because its jurisdiction has been enlarged. As pointed out in *Willis & Turner* v. *Moore & Davis, supra,* intolerable confusion would result if a distinction was attempted in procedure in cases brought under the original jurisdiction of the chancery court and its enlarged jurisdiction.

*(11)* And as brought out in *Sartain* v. *Dixie Coal & Iron Co., supra,* one who seeks the aid of equity has no standing to question the application of its fundamental rules.

Some other questions are raised on the brief for the complainant which have been fully considered by the lower courts and do not require further discussion. We think the result reached by the Chancellor and by the Court of Appeals was correct and the decree of the latter court is affirmed with costs.