## MRS. MABEL DUSHAN v. METROPOLITAN LIFE INSURANCE COMPANY.

Middle Section.    December 4, 1926.

Petition for Certiorari denied by Supreme Court, March 26, 1927.

1. **Death. Presumption of death after seven years' absence.**
It has become well settled that where a person leaves home with the expectation of returning thereto, and remains away, his absence being unexplained and unaccounted for, and no information is received concerning him, and his whereabouts cannot be ascertained although diligent search and inquiry are made in the vicinity of his home and at such places as he would likely go, and from such persons as he would likely meet and know, and nothing is heard from or of him, his absence from his family and home continuing for the period of seven years, a presumption arises from these facts that he is dead; unless there are other facts and circumstances shown which rebut and overcome such presumption of death.

2. **Death. That party has not been heard from for seven years alone does not raise presumption of death.**
It is not enough to raise the presumption that the person had not been heard from for seven years; but in order to raise the presumption of death from continued absences it must be shown as a prerequisite; first, that the party has neither returned to his place of last abode, domicile, or residence, or communicated with those with whom he would naturally communicate if alive, and, second, that diligent search and inquiry has been made for such party at his last known place of residence.

3. **Death. Death will not be presumed where there are circumstances that will account for the absence of the person.**
A presumption of death will not be indulged where the circumstances of the case are such as to account for the absent person without assuming his death, as where he is a fugitive from justice, especially where it is shown that he had abandoned his family on a previous occasion.

4. **Death. Evidence. Evidence held to account for party's absence and to refute the presumption of death.**
In an action to recover on a life insurance policy where it was alleged that the party was presumed to have died because he had not been heard from in seven years, and diligent search had been made for him and where the evidence further showed that prior to his disappearance the party had left his family and had been living in adultery with another woman, and that he had been arrested and released on the condition that he live with his family, held that under such evidence, the presumption of death was overcome and the plaintiff could not recover on the policy.

Appeal from Chancery Court of Davidson County; Hon. James B. Newman, Chancellor.

Reversed.

Garland S. Moore, of Nashville, for appellant, Insurance Company.

E. L. McNeilly and A. J. Griffith, both of Nashville, for appellee, Mrs. Dushan.

CROWNOVER, J. This was a suit to recover the amount of two insurance policies, $712, issued by the insurance company on the life of Henry R. Smith, the former husband of complainant. The bill alleged that the insurance company had issued the policies on the life of Henry R. Smith, payable to others, but upon his marriage to complainant he had the names of the beneficiaries changed making them payable to complainant, and that premiums on said policies had been regularly paid up until the bill in this cause was filed, and that Henry R. Smith disappeared in the year, 1918, and had not been heard of or from since that date, although diligent search and inquiry had been made, and that his unexplained absence for the term of seven years can be accounted for on no other hypothesis than death, and she therefore, charged that he was dead and that she had made demand on the insurance company for the amount of the two policies, which the company had refused to pay, therefore, she instituted this suit.

The defendant answered and denied liability on the ground that the circumstances, set out in the answer, are such as to account for his absence other than by death.

Several depositions were taken and read to the Chancellor, who held that evidence had been adduced sufficient for a presumption of death of Henry R. Smith, that his absence for seven years was not accompanied by circumstances accounting for such absence on any other hypothesis than death, and he therefore, rendered a decree against the insurance company for the amount of said policies. The defendant filed a petition for an additional finding of fact, which the Chancellor overruled, and he has appealed to this court and has assigned two errors:

(1) That the court erred in rendering a decree for complainant for $766.94 on said policies because the evidence does not justify the presumption of the death of Henry R. Smith.

(2) The court erred in dismissing appellant's petition for additional findings of fact, set out in the petition.

The material facts found by the Chancellor were that the two policies, totalling $712, were issued by the defendant company to Henry R. Smith, and after his marriage the beneficiaries were changed so that the policies were made payable to complainant; that Henry R. Smith left Nashville and went to Cincinnati and was followed by his wife in the year, 1918, and that while there he disappeared and has not been seen or heard of since, and that complainant had made

diligent search and inquiry, and investigation of all reasonable sources to ascertain his whereabouts, and in those places where information of him would likely be obtained; that she had made inquiry through the Police Department of Cincinnati, the Red Cross, Army Circles, Pressmen's Union, relatives, friends and acquaintances of Henry R. Smith, at his last places of residence, and could obtain no information through any source as to him, and that his unexplained absence for seven years could not be accounted for on any hypothesis other than death.

This court agrees with the Chancellor in his findings of fact with respect to the absence of Henry R. Smith and as to the diligent search and inquiry made by the complainant below, in so far as he goes in his original written opinion, and had there been no other or additional facts in the record, his decree undoubtedly would have been correct; but the defendant filed a petition for the finding of additional facts, as required by the statute section 12 of chapter 100 of Acts of 1925), which the Chancellor declined on the ground that the facts requested were either covered by the facts already found by the court, or were not material, or not supported by a preponderance of the testimony, or were not controlling and determinative of the questions adjudicated. In this we think the Chancellor erred.

We think that preponderance of the proof showed that Henry R. Smith was married to complainant in the year, 1908, and that she had one child by him on September 5, 1910, and that he lived with her until shortly after she was injured in a street car accident, and then he became "tangled up with another woman" on Broad street in Nashville, while his wife was paralyzed, deserted her in 1913, while destitute, and left Nashville. That he, being a printer or pressman, went to Chicago and other places, and later to Cincinnati, where he was visited by his wife and promised to live with her; that she returned to Nashville and later learned that he was living in open adultery with one Goldy Webster, representing her to be his wife, and that they resided in a house in Lockland, Ohio, a suburb of Cincinnati; that complainant went to Cincinnati in February, 1918, and had him arrested for nonsupport, that he was arrested while in bed with Goldy Webster at one o'clock at night, and was locked up in jail; that at the trial on next day, he agreed to return to complainant and live with her as man and wife, and to pay $8 per week for the support of their minor child until she became sixteen years of age, and, upon these promises, he was discharged from custody, and lived with complainant three weeks, when he disappeared and has not been heard from since; that Goldy Webster was notified by the police that she must leave town, and she has also disappeared; that Smith's father tried to persuade him to return to his wife but he

refused, and said that he was going to join the army; that he showed no affection for his wife and child; and that his brother said that he was afflicted with "too much mother-in-law;" that complainant obtained a divorce from him and the custody of the child in May, 1918.

We think there are three reasons which explained his disappearance: (1) He had no affection for his wife and child, and none for his mother-in-law. (2) He was infatuated with another woman with whom he had been living in open adultery under the pretense that she was his wife, and evidently desired to so continue. (3) He wanted to avoid the support of his wife and child, and the criminal prosecutions incident thereto.

We think these are the reasons for his disappearance rather than death.

There is some confusion in the earlier cases about the presumption of death from absence of seven years. Nothing is more common in public statement and belief than that if a man is absent for seven years the law presumes he is dead. This, without more, is an erroneous idea. In analogy to certain English statutes the courts have adopted the rule that "a person shown not to have been heard of for seven years by those who, if he had been alive, would naturally have heard from him, is presumed to be dead, unless the circumstances of the case are such as to account for his not being heard of without assuming his death." The principle has been developed by a process of judicial legislation. As the courts had to resort to the presumption of the continuance of life, in the absence of direct proof of life or death, in order to settle important rights, it became equally necessary to adopt some counter proposition in cases when the death of the person would, in the ordinary course of events, seem more probable than the continuance of life; hence, "it has become well settled that where a person leaves home with the expectation of returning thereto, and remains away, his absence being unexplained and unaccounted for, and no information is received concerning him, and his whereabouts cannot be ascertained although diligent search and inquiry are made in the vicinity of his home and at such places as he would likely go, and from such persons as he would likely meet and know, and nothing is heard from or of him, his absence from his family and home continuing for the period of seven years, a presumption arises from these facts that he is dead; unless there are other facts and circumstances shown which rebut and overcome such presumption of death." See, 1 Jones on Evidence (2 Ed.), secs. 285-297; Kennedy v. Modern Woodmen of America, 243 Ill., 560, 90 N. E. 1084; Marquet v. Aetna Life Ins. Co., 128 Tenn., 213; Ann. Cases 1915 B, 677; L. R. A. 1915 B, 749; 159 S. W., 733.

It is not enough to raise the presumption that the person had not been heard from for seven years; but in order to raise the presumption of death from continued absence it must be shown as a prerequisite: first, that the party has neither returned to his place of last abode, domicile, or residence, nor communicated with those with whom he would naturally communicate if alive, and, second, that diligent search and inquiry has been made for such party at his last known place of residence. Where a person removes from the State or country to establish a home or abode for himself at another place, the presumption must rest upon his absence from the last known domicile. Evidence must be introduced showing that diligent search and inquiry, and investigation of all reasonable clues concerning his whereabouts has been made in those places where information of him likely will be obtained, in order to give rise to the presumption.

Where evidence has been adduced sufficient to create a presumption of death from the absence of the party for seven years or more, unaccompanied by circumstances accounting for such absence on any hypothesis other than death, the burden of rebutting such presumption devolves upon the party asserting the continuance of life. But when the failure to communicate with his relatives, friends and acquaintances is satisfactorily accounted for on some other hypothesis than that of death, then no presumption of death arises.

"Since the presumption of death from unexplained absence is not absolute, and will not be indulged where the circumstances of the case are such as to account for the absent person without assuming his death, there may be a variety of circumstances which will prevent the inference of death from mere unexplained absence, such for example, as the desire of the absent person to conceal his identity, the improbability that the person who has been absent would have communicated with his home; that there was a cloud upon his or her character; or the fact that he was a fugitive from justice although it has been held that the fact that a person was a fugitive from justice does not as a matter of law prevent the presumption of his death after seven years' absence, although admissible in evidence to rebut the presumption." 17 C. J., sec. 19, pages 1175-6.

As above stated, a presumption of death will not be indulged where the circumstances of the case are such as to account for the absent person without assuming his death, as where he is a fugitive from justice, especially where it is shown that he had abandoned his family on a previous occasion. See Van Buren v. Syracuse, 72 Misc., 463, 131 N. Y. Supp., 345; Mutual Benevolent Life Ins. Co. v. Martin, 108 Ky., 11, 55 S. W., 694; Wolff's Estate, 12 Wkly. Bts. Co., 535; and notes to 44 A. L. R., 1488-9. Nor will such presumption arise where the party made a declaration of an intention to leave home for

some good reason, such as family troubles, especially where he was known to have been living in adultery. Donovan v. Twist, 93 N. Y. Supp., 990; Bradley v. Modern Woodmen of America, 146 Mo. App., 428, 124 S. W. 69. For cases along the same line see, Garwood v. Hastings, 38 Calif., 216, 229; Winter v. K. P. Lodge, 96 Mo. App., 1, 69 S. W., 662; Modern Woodmen v. Graber, 128 Ill. App., 585, 588; Carpenter v. Supreme Council, 79 Mo. App., 597; Bowden v. Henderson, 2 Sm. & G. 360, 65 Enc. Reprint, 436; Maxwell v. Maxwell (Neb.), 184 N. W., 227.

Our own case of Marquet v. Insurance Co., 128 Tenn., 213, is very much in point. In that case it was shown that the wife had obtained a divorce, that his family had become estranged and that Marquet had been enjoined from communicating with his family. The proof showed that Marquet had gone to Oakdale to live and had later left for New Orleans and possibly other places. His immediate family had not heard from him within seven years, but no inquiry had been made of his other relatives, and the court held that sufficient investigation had not been made for a presumption of death to arise.

Hence, we are of the opinion that both assignments of error should be sustained. We think that the Chancellor should have found additional facts about Smith's illicit relations with other women, his desertion of his family and want of affection for them, and the other facts hereinabove set out, and taking into consideration these facts we think the presumption of death does not arise and should not be indulged where the circumstances of the case are such as to account for his absence without his death. We think these circumstances as developed in this case are not sufficient for a presumption of death. The question would ordinarily be one for a jury, when the case is tried by a jury, but this cause was tried by the Chancellor, and on appeal equity causes are tried de novo. Willis & Turner v. Moore & Davis, 151 Tenn., 562, 271 S. W., 736.

It results that both assignments of error are sustained and the decree of the Chancellor is therefore, reversed and the bill dismissed. The cost of the cause, including the cost of the appeal is adjudged against the appellee, Mrs. Mabel Dushan, for which execution may issue.

Faw, P. J., and DeWitt, J., concur.

Note. The Supreme Court denied the petition for Certiorari on March 26, 1927, but later granted a petition to rehear for the purpose of allowing complainant to take a nonsuit, and the suit was dismissed without prejudice.