MRS. MABEL DUSHAN, Appellee, v. METROPOLITAN LIFE INSURANCE COMPANY, Appellant.

Middle Section. December 23, 1931.

Petition for Certiorari denied by Supreme Court, April 30, 1932.

Higgins & Moore, of Nashville, for appellant, Insurance Co.

E. L. McNeilly and A. J. Griffith, both of Nashville, for appellee, Dushan.

CROWNOVER, J. This was a suit to recover on two insurance policies, aggregating $712, and interest thereon from March 15, 1925, and twenty-five per cent penalty thereon, and premiums paid on said policies from March 15, 1925, to the date of the filing of the bill.

The bill alleged that the defendant Insurance Company had issued the policies on the life of Henry R. Smith, one in 1906, payable to his uncle, Cashion, or Nathan, Smith, and the other in 1908, payable to his mother, Mary A. Smith, but upon his marriage to complainant in June, 1908, he had the names of the beneficiaries changed, making them payable to complainant, and that the premiums on said policies had been regularly paid up until the bill in this cause was filed, and that Henry R. Smith had disappeared in the year 1918 and had not been heard of or from since that date although diligent search and inquiry had been made, and that his unexplained absence for the term of seven years could be accounted for on no other hypothesis than death, and she therefore charged that he was dead on March 15, 1925, and that she had made demand on the Insurance Company for the amount of the two policies, which the Company had refused to pay, therefore she instituted this suit.

The defendant Insurance Company answered and denied liability on the ground that the circumstances were such as to account for his absence other than by death, and pleaded the contractual limitation of one year, the Statute of Limitations of six years, laches, and that this suit was not brought within one year after the termination of a former suit against said Company on the same matter.

A jury was demanded and the case was tried by the judge and a jury upon evidence in open court. The issues submitted and the answers of the jury thereto are as follows:

"I. Q. What was the last known residence of the insured, Henry R. Smith? A. Cincinnati, Ohio.

"II. Q. When did he disappear from said residence? A. About March 15, 1918.

"III. Q. When and where was the said Henry R. Smith last seen alive? A. About March 15, 1918, Cincinnati, Ohio.

"IV. Q. Is Henry R. Smith dead? A. Yes.

"V. Q. If Henry R. Smith is dead, was he dead on March 15, 1925? A. Yes.

"VI. Q. Was the refusal of the defendant to pay the loss under the policies within sixty days after demand in good faith? A. We cannot agree.

"VII. Q. Did the failure of the defendant to pay the loss under the policies inflict additional expense, loss or injury upon the complainant, the holder of these policies? A. Yes."

The defendant moved the court to enter a mistrial for the reason that·the jury did not agree on the sixth issue. The complainant thereupon moved the court to be permitted to amend her bill so as to strike out all allegations seeking a recovery of the penalty for the nonpayment of the policies, which was granted, and the defendant's motion for a mistrial was overruled. A decree was then entered in favor of Mrs. Dushan and against the Insurance Company for the amount of the policies, $712, with interest from March 15, 1925, $268.21, and for the premiums paid by her from that date to the present, $130.80, with interest, $21.36, making a total of $1132.37.

The defendant moved the court to be. permitted to amend its answer so as to plead the former decree as res adjudicata, which was denied. Then the defendant filed a motion for a new trial, which was overruled, and it appealed in error to this court and has assigned fifteen errors, which, when summarized, are as follows:

(1) There is no evidence to support the verdict of the jury and the decree of the court thereon, that Henry R. Smith was last seen alive in Cincinnati, Ohio, on March 15, 1918, and that he was dead on March 15, 1925, and that the facts were sufficient to raise a presumption of death after seven years' absence.

(2) The court erred in declining to allow an amendment of the defendant's answer so that it might plead res adjudicata, as the former suit and decree embraced the same facts and issues sought to be relitigated in this suit.

(3) The court erred in overruling defendant's motion to dismiss complainant's bill notwithstanding the verdict, for the reasons: first, this suit was not instituted within a year after the dismissal of the former suit; and second, under the contractual limitation complainant's suit should have been brought within one year after her cause of action arose.

(4) The court erred in admitting in evidence, over defendant's objection, a long affidavit styled the "Declaration of Disappearance," and in excluding copies of the policies that had been lost and the letters of Goldie Webster written to Buford Smith.

(5) The court erred in not ordering a mistrial because the jury did not agree on the sixth issue—whether the defendant's refusal to pay the policies was in good faith.

(6) The court erred in allowing complainant interest on the policies from March 15, 1925, and in allowing complainant to recover the premiums paid by her to the defendant Company from March 15, 1925, to date, $130.80.

Under date of April 16, 1906, the Metropolitan Life Insurance Company issued a policy of insurance on the life of Henry R. Smith for the sum of $267, payable to his uncle, Cashion (or Nathan) Smith. On May 18, 1908, it issued another policy on the life of Henry R. Smith for $445, payable to his mother, Mrs. Mary A. Smith. Each policy contained a provision that insured might change beneficiary.

On June 30, 1908, Henry R. Smith married complainant, whose maiden name was Mabel Osborne, and some time afterwards had the beneficiary of each policy changed to Mabel Smith, wife of insured.

Henry R. Smith and wife had one child, Etta, born in September, 1910.

Some time in 1912 Mrs. Mabel Smith was injured in a street car accident and was taken to the home of her mother in Nashville' in order that she and her young child might have care and attention, Mrs. Smith being paralyzed as the result of the accident. While residing there, Henry R. Smith and Mrs. Smith's mother were on bad terms with each other due to the fact that his mother-in-law heard rumors of his association and women of bad repute and reprimanded him.

About April, 1912, he left Nashville, leaving his wife and child.

His mother had died not long before. His father had remarried and lived in Cincinnati, Ohio.

Henry Smith was born about 1885, or 1886, or 1887, had a high school education, was a printing pressman, and had been employed by the Brandon Printing Co., of Nashville, for several years.

Mrs. Mabel Smith received no word or news from him until the fall or winter of 1917, when she heard he was living with his father in Cincinnati. She went there, where she found him at his father's home, ill in bed, threatened with pneumonia. He promised her that he would return to Nashville and support her and the child. She returned to Nashville and later learned that he had secured employment with a printing company in Cincinnati and was living with a woman by the name of Goldie Webster, representing her to be his wife. She went again to Cincinnati, in February, 1918, and had him arrested for nonsupport. When he was arrested he was sick in bed with a cold, and claimed he was threatened with pneumonia. At the trial he agreed to return to complainant and live with her and to pay $8 per week for the support of their minor child until she reached the age of sixteen, and upon these promises he was discharged from custody. They lived together for about three weeks

in a suburb of Cincinnati when he disappeared, about March 15, 1918, and she has never seen him or heard from him since.

Shortly before his disappearance, in the spring of 1918, he had expressed to his father a desire to join the Army. Both of his brothers had joined the Army, and one was in France.

Complainant returned to Nashville and filed her bill for divorce and in May, 1918, secured an absolute divorce and the custody of the child.

· The two original insurance policies had been lost. The Insurance Company, on being informed of the loss, issued to complainant Lost Policy Certificates, giving the numbers, dates and amounts of each policy. All premiums were paid up to the filing of the bill on December 11, 1930.

Mrs. Smith made diligent search and inquiry for Henry Smith, investigating all reasonable sources to ascertain his whereabouts, and communicating with those places where information of him would likely be obtained. She made inquiry through the Police Department of Cincinnati, the Red Cross, Army, Pressmen's Union, relatives, friends and acquaintances of Henry R. Smith, at his last places of residence, and could obtain no information through any source as to him.

Henry Smith's father, R. D. Smith, moved back to Nashville from Cincinnati in 1918 and resided in Nashville until his death in 1928. His brother, Buford Smith, returned to Nashville after the War, where he has since resided. Neither one has ever heard from Henry Smith.

During the three weeks that Smith and complainant lived in Cincinnati he was in a bad state of health and was afraid he would develop pneumonia. She testified that he was of frail constitution, disposed from childhood to contracting colds and ailments of a pulmonary character. His father testified that when he last saw him "his health wasn't good, he had had pneumonia once or twice, and was a very delicate man." Buford Smith stated that he had pneumonia at least twice; that he was of slight stature, weighing only about one hundred and twenty-five or thirty pounds.

On May 2, 1925, Mrs. Mabel Smith married George Dushan.

Sometime in 1925, Mr. Hendry, a representative of the Insurance Company, called on complainant and offered her $135 as the cash surrender value of the policies, in full settlement of her claim under the policies, the Company having been informed by complainant of the disappearance of Henry R. Smith. It appears from the cross-examination of M. A. Simpson, Manager of Rock City Division of the Metropolitan Life Insurance Co., that the second policy had a cash surrender value of $65 and the first policy had no cash surrender value.

On September 29, 1925, complainant filed suit in the Chancery Court of Davidson County to recover the amount of the two policies, alleging that Henry R. Smith disappeared about March 15, 1918, and had not been heard of or from since that date, although diligent search and inquiry had been made, and that his unexplained absence for seven years could be accounted for on no other hypothesis than death, and she therefore charged that he was dead and that her right of action against defendant accrued on March 15, 1925, that she had made demand upon the insurance company for the amount of the two policies, which the company had refused to pay, therefore she instituted suit. The Chancellor rendered a decree against the Insurance Company for the amount of the two policies with interest and costs.

On appeal, the Court of Appeals held that the circumstances as developed in the case were not sufficient for a presumption of death. That court held as follows:

"We think there are three reasons which explained his disappearance: (1) He had no affection for his wife and child, and none for his mother-in-law. (2) He was infatuated with another woman with whom he had been living in open adultery under the pretense that she was his wife, and evidently desired to so continue. (3) He wanted to avoid the support of his wife and child, and the criminal prosecutions incident thereto.

"We think these are the reasons for his disappearance rather than death."

as is fully set out in the case of Mabel Dushan v. Metropolitan Life Insurance Co., 4 Tenn. App., 614. A decree was entered dismissing complainant's suit.

The suit was transferred to the Supreme Court by certiorari, where, on June 15, 1927, the decree of the Court of Appeals was affirmed, but upon application that court permitted complainant to dismiss her suit without prejudice, to the end, as stated by the Supreme Court, that, "if she can later make better proof of her former husband's death, she should be permitted to do so."

She continued a diligent search and inquiry for said Henry R. Smith and for news of and information concerning him, but without success. Her attorney wrote letters to the Chief of Police of Cincinnati, Chief of Police of Lockland, Ohio, Town Marshall of Hartwell, Secretary of Printing Pressmen's Union, Chief of Police of Chicago, Health Department of Chicago, International Printing Pressmen's Union, Chief of Police of Clyde, Ohio, Adjutant-General of the United States Army, Captains of the Salvation Army of Cincinnati and Lockland, Ohio, Secretaries of Y. M. C. A. of Cincinnati and Lockland, Recording Secretary of the Knights of Colum-

bus, Director of the Census, U. S. Department of Commerce, Washington, D. C., and others at different places where he might have resided.

In November, 1927, Buford Smith received through the mail two letters signed ''Goldie Webster,'' one of the letters stating that Henry Smith had been employed in San Francisco five and a half years before. Two years after the receipt of these letters Buford Smith attended the Shrine Convention in Los Angeles, California. En route to Los Angeles he made inquiries about Henry in every Texas and Arizona town through which he passed and in Los Angeles and San Francisco, but could learn nothing about him.

Upon hearing a rumor that he was in Chicago, Buford Smith wrote to an aunt who resided there and she made investigation.

Buford Smith communicated to the Insurance Company all the rumors he heard so that the Company with its organization might investigate them, as he was anxious to find his brother.

The Metropolitan Life Insurance Company had an office or agency in practically every city of any substantial size in the United States and an Investigation Bureau equipped for the purpose of such investigations, made investigations and located only one man, Cannon Hill, who stated that he had seen Henry R. Smith two or three times since his disappearance in Cincinnati.

Mrs. Dushan continued to make demand upon the Insurance Company for payment of the policies. In September, 1930, the Company gave her a blank called ''Declaration of Disappearance,'' to be filled out and filed by her. She filed an affidavit, answering the questions asked in same.

On December 11, 1930, Mrs. Dushan brought this suit against the Insurance Company, with the result above stated.

1. We think that there was sufficient evidence to carry the case to the jury on the proposition whether Henry R. Smith was dead on March 15, 1925, and that the verdict of the jury on the issues is supported by material evidence. The record shows that the complainant has made a most diligent search all over the country for Henry R. Smith and that she had not been able to discover any trace of him anywhere. Among all of his friends and relatives and places where he was liable to work no information concerning him has been obtained, other than that given by Cannon Hill and a letter purporting to have been written by Goldie Webster, which will be hereinafter more fully discussed.

It is true that Henry R. Smith had deserted his family and had lived in adultery with a woman by the name of Goldie Webster in Cincinnati, and when arrested he promised to live with the complainant and his child but again disappeared shortly after he had resumed family relations with complainant, which would ordinarily

rebut a presumption that he was dead after a seven years' absence; but these facts are not at all conclusive.

We fully reviewed the law concerning the presumption of death after seven years' absence in the former case of Mabel Dushan v. Metropolitan Life Insurance Company, supra, and it is not necessary for us to again review the propositions.

We think that the facts and circumstances as hereinabove detailed, as developed in this case, were sufficient for the jury to pass upon the questions. He had only one vocation, that of printing pressman, and inquiries made to the different local Pressmen's Unions all over the country and to the International Pressmen's Union failed to disclose his whereabouts. Many other equally searching investigations resulted in no information concerning him. Such investigations for twelve years should have brought results from some source if he were alive. The facts that he had deserted his family, and lived with another woman in adultery, and was even a fugitive from justice, do not as a matter of law prevent the presumption of death after seven years' absence, although admissible in evidence to rebut that presumption. 17 C. J., 1175-6, sec. 19; 8 R. C. L., 708-9.

After a careful investigation of the record we find that there is no evidence that Henry Smith was seen or heard of since 1918 except that of Cannon Hill and Goldie Webster. Cannon Hill's testimony is seriously attacked on cross-examination and by other proof in the record. He says that he saw Henry R. Smith in Clyde, Ohio, in 1922, and again at his home in Chicago in 1924 when he took dinner with him, and again in New York City in January, 1926. There is no testimony that any other person had seen or heard of Henry R. Smith since March, 1918, except the intimation that Goldie Webster had lived with him after that.

Cannon Hill's testimony is very unsatisfactory. He doesn't remember the date of his marriage, the age of his wife, when they separated, whether he had heard from his former wife after the separation, the dates of the deaths of his father and mother, when he left Nashville or Chicago, or where or on what street he saw Henry R. Smith in New York, and does not remember a "single word" of what they talked about, although he had a conversation of an hour with him in New York City. In fact, he is not definite about any date except that he saw Henry Smith in New York in January, 1926. Complainant attacks Cannon Hill's character and says he is unworthy of belief and that he was one of the biggest liars in Nashville.

Defendant attempted to introduce a letter from Goldie Webster to Buford Smith, written in 1927, in which she states that she lived with him in California five and a half years prior to that date. The court excluded that letter, but allowed Buford Smith to state that

she had informed him that she had lived with Henry Smith five and a half years prior to that time. The letter was excluded because Buford Smith did not know Goldie Webster's handwriting and of course did not know whether Goldie Webster had actually written such letter. This statement that she had lived with him five and a half years prior to that time went to the jury for whatever it might be worth. The proof. showed that she lived with Henry R. Smith in Lockland, 'Ohio, as his wife, in 1918, when he was arrested and she was notified to leave town. Buford Smith went to California and investigated but without results.

Evidently the jury did not believe what Cannon Hill had sworn or the purported statement of Goldie Webster. Hence the assignments on this proposition must be overruled.

2. The assignment that the court erred in declining to allow the amendment of defendant's answer so as to plead res adjudicata, is not well made for two reasons: (1) An amendment at that late stage was within the sound discretion of the Chancellor. Gibson's Suits in Chancery, secs. 354, 434; Story's Equity Pleading (10 Ed.), sec. 701, note 1. (2) The original suit was dismissed without prejudice and that decree is not res adjudicata. Memphis & Charleston R. R. Co. v. Pillow, 9 Heiskell, 248.

This court decided only one proposition in the former suit and that was that there was not sufficient evidence in that case for the court to presume his death from seven years' absence. In this case there was much more proof of investigation without any information concerning him.

3. The defendant's contention that this suit was barred because not instituted within one year after the former suit was dismissed, is not well made for the reason that the other suit was dismissed without prejudice and the Statute of Limitations had not yet run. The statute of six years limitation applies to insurance policies, that is, a suit brought within six years after the right of action accrues is not barred simply because a former suit was dismissed without prejudice. 37 C. J., 597, sec. 378; Shannon's Code, sec. 4472. The statute, Shannon's Code, sec. 4446, with respect to bringing a new suit within one year after nonsuit, does not apply where the cause of action is not barred by the Statute of Limitations. By this statute "the remedy otherwise barred has been saved to the plaintiff by suspending the operation of the Statute of Limitations." Moran v. Weinberger, 149 Tenn., 544, 260 S. W., 966.

"A statutory bar must exist and the necessity for invoking the exemption therefrom sufficiently appear before the privilege is available. by way of extending the right to sue." 37 C. J., 1085, sec. 530.

"If there is no such bar, or if there is one whose limitation has not run against the cause of action, nothing except laches will prevent the institution and maintenance of the second suit." Browning v. Browning, 85 W. Va., 46, 100 S. E., 860, 862; Shell v. Lineberger, 183 N. C., 440, 111 S. E., 769.

In other words, this statute, Shannon's Code, section 4446, requiring that a new suit be brought within one year after the dismissal of the former suit, does not operate to limit or abridge the general statutes of limitations, and if the right of action is not barred by the general statute a new suit may be instituted at any time before the Statute of Limitations bars the right of action, regardless of whether it be one or more years after the dismissal of the original suit.

The insistence that the action is barred by one year contractual limitation, is not well made for the reason that there is no proof that there was a contractual limitation. The alleged copies of the original policies were properly excluded as will be hereinafter shown.

4. The assignment that the court erred in admitting certain evidence over defendant's objection and in excluding other evidence offered by the defendant, is not well made. It is insisted that the court erred in admitting over defendant's objection complainant's long affidavit known as the "Declaration of Disappearance," filed as Exhibit 11 to the bill, and authenticated as 17N to the bill of exceptions. There was no error in the admission of this document for two reasons: first, because it was a part of the correspondence between the parties and was originally made and filed with the defendant at its request; and second, the court explained to the jury that it was admitted only for the purpose of showing that the plaintiff had made demand on the defendant for the payment of these policies and that the jury could not consider the statements in that affidavit as evidence of the facts therein stated.

It is insisted that the court erred in excluding the alleged copies of the original policies that had been lost, which copies were proposed to be filed as Exhibits 1 and 2 to Simpson's testimony. The court properly excluded these copies for the reasons: (1) Simpson never saw the original policies and knew nothing about what they contained. He testified that they did not come from his office but were furnished by the home office to the attorneys for the defendant. (2) They were made up by somebody not shown and were not copies of the original policies. The original policies were made payable to Cashion Smith and to Mary A. Smith, whereas these copies were made payable to Mabel Smith and were dated long before her marriage to Henry R. Smith, hence they show on their faces that they are fabrications and should not have been introduced

as secondary evidence. Proof of lost instruments should be admitted with caution. Roysdon v. Terry, 4 Tenn. App., 638, 645.

It is insisted the court erred in excluding the letters of Goldie Webster written to the deceased's brother, Buford Smith, in 1927. The court permitted Buford Smith to testify that he had received a letter from Goldie Webster, stating that Henry R. Smith was alive five and a half years prior thereto, but he excluded the letter as it was an ex parte statement and was hearsay. This assignment must be overruled for two reasons: first, because the defendant did not except to the action of the Chancellor (Steele v. Frierson, 85 Tenn., 430, 439, 3 S. W., 649; Anderson v. Railroad, 91 Tenn., 44, 54, 17 S. W., 803); and second, because this was an ex parte statement and hearsay. 1 Greenleaf on Evidence (16 Ed.), secs. 98, 99.

5. The assignment that the court erred in not ordering a mistrial because the jury did not agree on the sixth issue—whether the defendant's refusal to pay the policies was in good faith, and in permitting complainant to amend her bill so as to strike out all reference to a penalty, and then ruling that the sixth issue had become immaterial, is not well made.

It is insisted that the bill was loud in the denunciation of the defendant for its refusal to pay and charged 'the defendant with bad faith in trying to buy up her policies through its agent, and that the defendant knew that the insured was dead and concealed the fact from her and had ignored her letters, and that complainant had filed a long affidavit known as the "Declaration of Disappearance" which was filled with denunciations, repetitions and insinuations which prejudiced the jury, and it was insisted that the issue of good faith was so interlocked with the other issues that the evidence on this subject influenced the jury in arriving at their verdict on the other issues.

We are of the opinion that this assignment is not well made for the reason that all the proof would have been relevant on the other issues. The court charged the jury that the letters and affidavit, or "Declaration of Disappearance," were not evidence of the statements made in them, but were admitted only for the purpose of showing that the complainant made demand on the defendant for payment of the policies and were part of the general correspondence between the parties. The court particularly charged the jury that they should not take the statements in affidavit and in the correspondence as evidence of the facts therein stated. There was no exception to the complainant's counsel's verbal denunciation of the defendant or its witnesses. Hence, taking all the evidence together with the Chancellor's charge to the jury, we do not think that the evidence on these issues affected the jury's verdict on the other issues, and these assignments are overruled.

434

6. The assignment that the court erred in allowing interest on the amount of the policies from March 15, 1925, to the present, and in allowing $130, premiums paid since that date, is not well made and must be overruled.

Interest on a policy of life insurance is allowable from the date when it becomes payable. Knights of Pythias v. Allen, 104 Tenn., 623, 58 S. W., 241; Railroad v. Fort, 112 Tenn., 460, 80 S. W., 429; Assurance Co. v. Morrow, 143 Fed., 750.

In this case the jury found that he was dead on March 15, 1925, and the policies were payable on that date. There is nothing in the record to show that the original policies required proofs of loss, as contended by defendant, and there is nothing in the contention that complainant is estopped to assert a default because she continued to pay the premiums thereafter.

The contention that complainant is not entitled to recover premiums paid after March 15, 1925, amounting to $130.80, is not well made. Where premiums are paid and the company is not entitled to the same, the assured may recover the money paid upon an implied promise. Bostick v. Maxey, 5 Sneed, 173.

All of the assignments of errors having been overruled, it results that the decree of the lower court must be affirmed. A judgment will be entered in this court for $1132.37 and interest thereon from June 26, 1931, to the present, in favor of complainant, Mabel Dushan, and against the defendant, the Metropolitan Life Insurance Company and the surety on its appeal bond. The cost of the cause including the cost of the appeal is adjudged against appellant and the surety on its appeal bond. Execution will issue accordingly.

Faw, P. J., and DeWitt, J., concur.