BALLINGER *v.* CONNECTICUT MUT. LIFE INS. CO.

(*Nashville.* December Term, 1933.)

Opinion filed March 31, 1934.

C. H. RUTHERFORD and C. H. RUTHERFORD, JR., both of Nashville, for appellant.

WALTER STOKES, of Nashville, for appellee.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

This is an action to recover the value of a contract of life insurance, issued by defendant in 1922 to Luther Ballinger, complainant's husband. Hearing the case on stipulated facts, the chancellor decreed that complainant had not established her right to recovery, and dismissed the bill. Complainant has appealed.

The bill avers that the insured met his death on or shortly after November 20, 1925, the date of his disappearance, and relies upon the common-law presumption of death after seven years' unexplained absence to establish the fact of his death; the suit having been begun more than seven years after that date. Application of that presumption is not contested, in so far as the fact of death is concerned, but the defendant contends that the presumption is not available to establish

the fact of death until at the end of the seven-year period, and that there is no sufficient evidence to prove the death of the insured while the contract of insurance was in force.

The life of the contract of insurance was extended, by application of its cash value when premium payments were discontinued until January 24, 1931, five years and two months after the disappearance of the insured.

The stipulated facts exclude any reasonable probability that the disappearance of the insured was voluntary on his part. His occupation was that of a barber, by which he "supported" his family. He was married and was the father of a girl seven years of age, of whom he was "exceedingly fond." His domestic relations "were the very best." He frequently changed his place of residence, but "kept in constant touch and communication with his wife," writing her three or four times a week. During his periods of absence, complainant would remain with her father, in this State.

Ballinger left Nashville on October 19, 1925, for Chicago, to follow his trade in that city, "because business was better and he expected to earn more money there." He established himself there at an address at which he and his wife had formerly resided, and where he was known. He remained there for four weeks, during which time he wrote complainant three or four letters a week, the last, dated November 20, containing a money order for $35, for her living expenses, and his usual expressions of affection. His letters expressed his intention that complainant and his daughter "would join him in Chicago where they expected to live."

The letter of November 20, 1925, was the insured's last communication to his family. He disappeared, leav-

ing his trunk and other personal belonging at his boarding house, and did not return to claim them. Diligent search by complainant, through the police departments of Chicago and other cities, and otherwise, has revealed no trace of him. He held a compensation certificate in the sum of $1,258, issued by the government of the United States to him as an ex-soldier, which was left in complainant's possession, because of which complainant extended her search for him "through the Federal Government," to no avail.

The stipulation of facts recites: "Chicago is a city where many lawless characters reside, where the underworld is prominent and powerful, and where there exist gunmen and gangsters."

■ At the date of his disappearance, Ballinger was about 30 years of age, and was afflicted with sinus trouble and gallstones, and his surgeon had ordered an operation for the latter ailment. There is no stipulation as to his personal habits, except in so far as it may be inferred from his domestic relations and his devotion to his family that he was not dissolute nor lacking in recognition of moral responsibility. The stipulation of facts "may be taken with all the admitted facts and the inferences legitimately to be drawn from them." *Federal Trade Commission* v. *Pacific States, etc., Association,* 273 U. S., 52, 47 S. Ct., 225, 257, 71 L. Ed., 535; quoted in *Still* v. *Equitable Life Assurance Society,* 165 Tenn., 224, 236, 54 S. W. (2d), 947, 951, 86 A. L. R., 382.

■■ We conclude, supported by abundant authority, that the reasonable and legitimate inference of fact to be drawn from the stipulated facts is that the death of the insured, the fact of which is established by the presumption of law after seven years from the date he was

last seen or heard from, occurred on or about the date of his disappearance, and before the expiration of his insurance contract five years later. The proof suggests no other reasonable cause for the insured's abandonment of his family and property and mode of life which he had found pleasant and satisfactory.

■ This reference to the legal presumption in aid of the inference of the time of death is not a resting of one inference upon another. ''The one, no doubt, helps the other, but both rest upon the strong probabilities which arise from a consideration of all the various facts and circumstances involved, which method of reaching a determination, with its possible lack of refined reasoning, is permissible because of the necessities peculiar to this particular class of cases.'' MOSCHZISKER, J¹., in *Fanning* v. *Equitable Life Assurance Society*, 264 Pa., 333 107 A., 715, 717.

Prior expressions of this court, material to the question, are brief and pointed. ''But all the authorities agree that the time of death is to be inferred by the court or jury from the circumstances.'' *Shown* v. *McMackin*, 9 Lea (77 Tenn.), 601, 608, 42 Am. Rep., 680. The presumption of the death of a person arises only from his absence, without intelligence concerning him, for the period of seven years, but ''a jury may find the fact of death, if the circumstances of the case concur, from the lapse of a shorter period than seven years.'' *Puckett* v. *State*, 33 Tenn. (1 Sneed), 355, 360.

■ ''The law does not require that any theory or contention of either party in a civil suit shall be freed from doubt, suspense, or uncertainty. . . . After all the evidence that can be produced is introduced, the jury may still be unsatisfied,—not convinced. Their

minds may not be at rest. They may not be freed from doubt, uncertainty, and suspense. But still the jury may recognize that there is a preponderance of evidence, and on that they may base their verdict." *Knights of Pythias* v. *Steele*, 107 Tenn., 1, 63 S. W., 1126, 1128; *Gifford* v. *Provident Life Ins. Co.* (Tenn. App.), 64 S. W. (2d), 64.

■ We quote from the text of Ruling Case Law, vol. 8, p. 713, "Death," sec. 8: "The death of an absent person may also be presumed in less than seven years, from other facts and circumstances than exposure to a probably fatal danger, such as the improbability of, and lack of motive for, abandoning his home. Thus the evidence of character, habits, domestic relations, and the like, making the abandonment of home and family improbable, and showing a want of all those motives which can be supposed to influence men to such acts, may be sufficient to raise the presumption or to warrant an inference of the death of one absent and unheard from, without regard to the duration of such absence."

This statement we find to accurately express the rule supported by a very clear weight of authority. See cases collected in note, 34 A. L. R., 1389, 1390; *Kansas City Life Ins. Co.* v. *Marshall*, 84 Colo., 71, 268 Pac., 529, 61 A. L. R., 1321, and note; *Tisdale* v. *Connecticut Mut. Life Ins. Co.*, 26 Iowa, 170, 96 Am. Dec., 136; *Williams* v. *National Life & Accident Ins. Co.*, 222 Mo. App., 355, 1 S. W. (2d), 1034; *Schell* v. *Metropolitan Life Ins. Co.* (Mo. App.), 3 S. W. (2d), 269; *Arden* v. *United Artisans*, 124 Or., 225, 264 Pac., 373; *American Nat. Ins. Co.* v. *Hicks* (Tex. Com. App.), 35 S. W. (2d), 128, 75 A. L. R., 623; *Eklund* v. *Supreme Council of Royal Arcanum*, 152

Minn., 20, 187 N. W., 826; *Sackett* v. *Mo. Life Ins. Co.*, 260 Mich., 466, 245 N. W., 499.

The defendant cites and relies upon *Davie* v. *Briggs*, 97 U. S., 628, 24 L. Ed., 1086, wherein it was said that a jury may infer the death of an absent person, at a date within the seven-year period, from evidence that at such time he encountered some specific peril or came within the range of some impending or immediate danger. But this statement was not intended to be exclusive, as is shown by the Supreme Court's own interpretation of its ruling in the later case of *Fidelity Mutual Life Association* v. *Mettler*, 185 U. S., 308, 22 S. Ct., 662, 666, 46 L. Ed., 922, the court saying: "But it was not thereby ruled that the inference of death might not arise from disappearance under circumstances inconsistent with a continuation of life, even though exposure to some particular peril was not shown. . . ."

The cases of *Browne* v. *New York Life Ins. Co.* (C. C. A.), 57 Fed. (2d), 62, *McCune* v. *U. S.* (C. C. A.), 56 Fed. (2d), 572, and *Carlson* v. *Equitable Life Assur. Soc.*, 188 Minn., 43, 246 N. W., 370, 372, cited by defendant, are, we think distinguishable on their facts from the case before us. The case last cited expressly recognizes the rule which we apply; the Supreme Court of Minnesota saying: "Even in the absence of evidence of exposure to some specific peril, a jury may be justified in finding that death occurred soon after an unexplained disappearance when the absentee was happily circumstanced and when his character and habits were such that there is no other reasonably probable reason for his disappearance or absence."

The decree of the chancellor will be reversed, and a decree entered here awarding complainant a recovery in the sum of $2,000, the value of the insurance contract, with interest from the commencement of the suit.