NATIONAL LIFE & ACCIDENT INS. CO. v. GRIZZARD.—145 S. W. (2d) 800.

Middle Section. August 17, 1940.

Petition for Certiorari Denied by Supreme Court, December 21, 1940.

J. L. Reynolds, of Nashville, for plaintiff in error.
Jos. L. Lackey, of Nashville, for defendant in error.

FAW, P. J. Kittie Grizzard sued The National Life & Accident Insurance Company in the Court of General Sessions of Davidson County, on March 20, 1939, to recover the "death benefit" under two insurance policies insuring the life of Willie Richardson. The policies were numbered E-7652752 and E-7652753, respectively, and plaintiff averred that she was the beneficiary under said policies, but, pending the trial below, plaintiff dismissed her suit on policy E-7652752, for the reason, stated by her attorney, that she was "not the beneficiary" under that policy; hence the case may be treated here as an action upon policy E-7652753 alone.

The Court of General Sessions rendered judgment for the plaintiff and against the defendant for $165 and cost of suit, whereupon the defendant appealed to the Circuit Court of Davidson County, where the case was tried before the judge, without a jury, and the court found that the defendant was indebted to the plaintiff in the sum of $48, and rendered judgment accordingly in favor of the plaintiff and against defendant and its surety (on its appeal bond) for $48 and all the costs of the cause.

A motion for a new trial seasonably filed by the defendant was overruled, to which action of the court the defendant excepted and prayed, obtained and perfected an appeal in the nature of a writ of error to this court and has assigned errors here.

We will designate the parties as they appeared on the record below—Kittie Grizzard as plaintiff and The National Life & Accident Insurance Company as defendant.

The plaintiff's cause of action is stated in the warrant issued from the Court of General Sessions as follows:

"A civil action brought by Kittie Grizzard, for the death benefit under policies of insurance No. E-7652752, and No. E-7652753, insuring the life of Willie Richardson, here to the. Court shown. . The plaintiff is the beneficiary under the above numbered policies. The insured has disappeared and has not been heard of or from by any one to the knowledge of plaintiff for a period of over ten years. The insured thereby is presumably dead, and by reason thereof the plaintiff has made specific demand for the death benefit under the policy. but the defendant has wholly failed and refused to pay, wherefore the plaintiff sues the defendant for $332.00, under ―――― dollars."

■ It is seen that, although the plaintiff is suing to recover the "death benefit" under policies "insuring the life of Willie Richardson," there is no specific averment in the warrant that Willie Richardson is dead. According to the averments of the warrant, the plaintiff predicates her right to recover upon a rebuttable presumption. It is not sufficient for the declaration "to state something from which the jury may infer the fact; the fact itself must be averred." Couch on Insurance, Vol. 8, sec. 2102, p. 6812. The warrant "was intended not only as the original process to bring the defendant before the court, but also to, at least to some extent, take the place of a declaration." Memphis St. Railroad Co. v. Flood, 122 Tenn., 56, 75, 113 S. W., 384, 388.

But there was no motion to quash the warrant (which would have been equivalent to a demurrer), nor any motion in arrest of judgment, and the warrant was treated by the court and counsel below as sufficient to tender the issue that the insured, Willie Richardson, was dead, and the sufficiency of the warrant in this respect has not been questioned in the briefs or oral arguments of counsel in this

court. The case having been thus tried below upon the theory that the death of the insured, Willie Richardson, was sufficiently averred in the warrant, the defendant could not have been heard in this court to object to the warrant in that respect, if it had sought to make such objection here (Odell v. Koppee, 5 Heisk., 88, 90; Allen v. Cherokee Motor Coach Co., Inc., 20 Tenn. App., 446, 450, 100 S. W. (2d), 240, 241), and this court will proceed on the assumption that the plaintiff's pleadings sufficiently averred that the insured was dead.

The policy-contract on which the plaintiff sued in this case was issued by the defendant on January 4, 1926, and was a combined "endowment" policy and a life insurance policy. The defendant company thereby agreed, in consideration of the payment of a weekly premium of twenty cents, and subject to certain specified conditions, to pay to the insured (then aged forty-four years), as an endowment, on the anniversary of the policy next after the insured shall have passed the age of sixty-nine years, upon the surrender of the policy and evidence of premium payment thereunder, the sum of $160.; and further agreed, subject to the conditions aforesaid, that, if the insured shall die prior to the date of the maturity of the endowment, to pay to the beneficiary named in the policy, upon receipt of proofs of the death of the insured, made in the manner and upon the blanks required in the policy, and upon surrender of the policy and evidence of premium payments thereunder, the sum of $164.

Other provisions and conditions of the policy will be stated later herein.

The insured was an unmarried man, and the plaintiff was his sister. The plaintiff "took out" the policy, and was named therein as the "beneficiary," and she paid the weekly premiums due thereon, without default, until December 31, 1933, since which date no premiums have been paid on said policy. Plaintiff stated, in her testimony, that she "quit" paying the premiums on said policy "because work got dull" and she "just couldn't keep it up."

There is no direct evidence in the record that the insured, Willie Richardson, is dead. The plaintiff is relying entirely upon the presumption of death arising from an unexplained absence of more than seven years. Couch on Insurance, Vol. 8, sec. 2228, p. 7224; Puckett v. State, 1 Sneed, 355, 360; Shown v. McMackin, 9 Lea, 601, 42 Am. Rep., 680; Marquet v. Ætna Life Insurance Co., 128 Tenn., 213, 159 S. W., 733, L. R. A., 1915B, 749, Ann. Cas., 1915B, 677; Ballinger v. Mutual Life Insurance Co., 167 Tenn., 367, 368, 69 S. W. (2d), 1090; Scruggs v. Baugh, 3 Tenn. App., 256, 260; Dushan v. Metropolitan Life Insurance Co., 4 Tenn. App., 614, 618; and (on second appeal), Id., 14 Tenn. App., 422.

The plaintiff, Kittie Grizzard, was the only witness to the facts from which it is claimed the presumption of the death of the insured arises. One other witness testified at the trial in the Circuit Court, viz: the plaintiff's attorney, but his testimony relates to other matters. It is stated in the brief for plaintiff that there was a stipulation by counsel that "Willie Grizzard" (husband of plaintiff), if introduced as a witness, "would testify substantially as Kittie Grizzard;" but we have been unable to find any such stipulation in the record, and we are necessarily confined to the evidence in the record. However, this is not material to the result, for the defendant introduced no evidence, and the testimony of the plaintiff is undisputed, and therefore, for the purposes of this appeal, is of as much probative value as if it had been corroborated by her husband. Plaintiff was examined and cross-examined at considerable length, and a full transcript of her testimony is in the bill of exceptions. With reference to the disappearance of the insured, plaintiff's testimony is, in substance, that Willie Richardson lived at plaintiff's home in Nashville, "most of the time," but stayed at the home of another sister in Nashville "part of the time," and would sometimes go to the home of his brother who lived in or near Nashville; that Willie Richardson had a job at a flour mill in Nashville, but "the mill went down and quit making flour" and "they laid them all off;" that, in September or October, 1927, he (Willie Richardson) left plaintiff's house in Nashville and when he left he said he was "going to Cleveland" and was "going to work" and send plaintiff "some money;" that he paid her for his board "when he had a job," and he didn't owe her anything when he went away, but she "washed and cooked and ironed for him" and was "so nice to him" that she thought if he had any money he would send her some; that when he left he carried some of his clothes with him and left some of them at plaintiff's home; and that he was in good health when he left plaintiff's home as aforestated.

Plaintiff testified further that her sister died (in Nashville) on June 23, 1928 or 1929 (the record is not clear as to whether it was in 1928 or 1929), and, at that time, plaintiff tried to locate Willie Richardson by telegrams and letters to plaintiff's nephew in Cleveland and her niece in Chicago, but they wrote her that "they hadn't seen him and didn't know where he was," and, so far as plaintiff ever learned, he never got to Cleveland or Chicago; that she had inquired of Willie Richardson's only brother, who said that "he didn't know anything about him;" that "the only places" she had "inquired" was in Cleveland and in Chicago and "up about" her "home in Smyrna and Murfreesboro," but that she had never "inquired" of the Police Department or the Vital Statistics Bureau of Nashville or Cleveland or Chicago, and had never asked the Police Department to help locate him; that she had never heard from him or known his

whereabouts since he left her home as aforesaid in 1927, and that she does not know anybody that has seen or heard of him "since he left."

It appears from his written opinion in the record that the learned Special Judge who tried the case in the Circuit Court held (1) that upon the evidence it is reasonable to presume that the insured, Willie Richardson, is dead; (2) that the plaintiff's cause of action accrued at the expiration of the period of seven years after his disappearance, which period of seven years "expired in August or September, 1934," and the contractual limitation provided in the policy, barring actions thereon after two years from the accrual of the right of action, bars the plaintiff from recovering *"the principal sum of the contract;"* (3) that, under its provisions and stipulations "in regard to paid-up insurance . . . the policy has a paid-up value of $48.00," which sum the defendant Company holds *"as a trustee for the beneficiary,"* and the contractual limitation for bringing suit "has no application" to an action to recover the sum thus held in trust by the company.

In addition to its broad assignments (1) that there was no material evidence to sustain the judgment of the trial court, and (2) that the finding and judgment of the trial court were against the preponderance of the evidence, the defendant asserts, through more specific assignments of error, that the trial court erred in holding (a) that there was no sufficient evidence introduced by plaintiff to sustain a presumption of the death of the insured; (b) that the terms of the policy of insurance had been sufficiently complied with by plaintiff in furnishing proofs of death as required under the policy and in giving notice or information concerning a loss under the terms of the policy or in her demands for payment thereunder; and (c) that the paid-up value of the policy was a trust fund and that its recovery by plaintiff was not barred by the contractual limitation provided in the policy.

In dealing with the trial court's findings of fact, it will be observed that, as the case was tried below without a jury, it is triable de novo in this court, but with the presumption that the trial court found the facts correctly, unless the evidence preponderates against the judgment. Code, section 10622.

Although the evidence of diligence on the part of plaintiff, or any one else, in the effort to ascertain the whereabouts of the insured, we are of the opinion that the disappearance of the insured, under the circumstances attending his departure from plaintiff's home in Nashville (his last known place of residence), and the entire absence of evidence of any facts which would afford a motive for his failure to communicate with the plaintiff or his other relatives, or to conceal his whereabouts, are sufficient to establish the presumption that he is dead, and that the evidence does not preponderate against such finding by the trial court.

The defendant filed several written pleas below, one of which was "that no proof of death has been furnished it as provided in the policies of insurance sued on herein and no demand has been made by the plaintiff upon the defendant for the payment of any amount as required under the contract of insurance."

On the issue made by the above-quoted plea, the finding and opinion of the trial court was as follows:

"The proof further shows that plaintiff's attorney made demand upon the defendant by two letters, but that these letters were disregarded and unanswered. Copy of these letters were filed in the General Sessions Court but could not be found with the papers on appeal. Plaintiff's attorney testified unequivocally as to the language of these letters and we hold that they constituted a demand upon the defendant and the defendant's refusal and neglect to answer these letters constituted a waiver of the defendant's rights to demand a proof of loss before suit was instituted."

By the terms of the policy, the principal sum ($164) was payable to the beneficiary "upon receipt of proofs of death of the insured made in the manner, to the extent and upon the blanks required" therein; and it was further provided that "Proofs of death under this policy shall be made upon blanks to be furnished by the Company and shall contain answers to each question propounded to the claimant, physicians and other persons, and shall contain the record, evidence and verdict of the Coroner's inquest, if any be held;" and that "paid-up" insurance, for a reduced amount in accordance with an appended "table," should be "payable on the same conditions as this policy, but upon which no further payment of premiums shall be required," if, after premiums upon the policy have been fully paid for three years or more and there is then a default in the payment of any subsequent premium.

In the absence of a waiver by the insurer, proofs of death made in the manner required by the policy are a condition precedent to a recovery by the beneficiary in a life insurance contract. Couch on Insurance, vol. 7, sec. 1527, pp. 5428, 5429.

In the instant case, the undisputed testimony of the plaintiff's attorney is, in substance, that he wrote and mailed two letters to the defendant company (first in August, 1938, and again in February, 1939) informing it that the insured, Willie Richardson, had disappeared and had not been heard of in over ten years, and asking the defendant "for forms or whatever was required in a case of this nature," and (in the second letter) stating that he "was going to bring suit if they didn't settle," but that the defendant did not reply or respond in any manner to either of said letter.

Inasmuch as the policy required the beneficiary to submit proofs of death "upon blanks to be furnished by the Company," we think that the failure of the defendant (which in the circumstances was equiva-

lent to a refusal) to furnish such blanks upon request therefor, was equivalent to a denial of liability, and was a waiver of defendant's "right to insist on proofs of death as a condition precedent to the beginning of suit" (Miller v. Sovereign Camp, 140 Wis., 505, 122 N. W., 1126, 1128, 28 L. R. A. (N. S.), 178, 181, 133 Am. St. Rep., 1002) ; and we concur in the ruling of the trial court on this point.

. In order that our reasons for the conclusions we have reached (as hereinafter stated) with respect to the ruling of the trial court that the paid-up value of the policy was a trust fund, and that its recovery by plaintiff was not barred by the contractual limitation provided in the policy, it is necessary that certain pertinent provisions of the policy be more fully stated.

The face or body of the policy, to which the signature of the company by its officers and the seal of the company are affixed, contains provisions as follows:

"If any premium shall not be paid when due, this policy shall be void, except as herein otherwise provided . . .

"If this policy is or shall become void, all premiums paid shall be forfeited to the Company, except as provided under 'Privileges and Concessions to Policy-Holders' . . .

"No suit shall be brought nor action commenced against this Company under this policy after two years from the time when the right of action shall accrue unless otherwise provided by the law of the State of the contract . . .

"The Privileges and Concessions to Policy-Holders scheduled on the reverse side hereof and any endorsement either printed or written as made by the Company on this or the reverse side hereof are a part of this contract as fully as ·if recited over the signatures hereto affixed."

On the "reverse side of the policy" under the heading "Privileges and Concessions to Policy-Holder" and subheading "Non-Forfeiture Privileges," the following appears:

"Paid-Up Policy. After premiums upon this Policy have been fully paid for three years or more, then in case of default in the payment of any subsequent premium the Company will, without action on the part of the holder, continue this Policy as a Paid-up Policy, payable on the same conditions as this Policy, but upon which no further payment of premiums shall be required, for a reduced amount in accordance with the following table, but any indebtedness to the Company hereon, if not repaid, will reduce the amount of insurance in such proportion as the indebtedness bears to the amount of surrender value used as a single premium in calculating the values appearing in the table:"

Then follows the "table" by which the value of a paid-up policy shall be calculated, and it is conceded on the record, without con-

troversy, that, according to said "table," the paid-up value of the policy here involved, at the time plaintiff's cause of action accrued, was $48.

 It is seen from the provisions of the policy hereinbefore quoted that the provision for a "paid-up policy" printed on the "reverse side" of the policy, is *a part of the insurance contract* as fully as if recited in the face of the policy over the signature of the company, and that such paid-up insurance is *"payable on the same conditions as this policy."* (Italicizing ours). One of the "conditions" of the policy is that "no suit shall be brought nor action commenced against this Company under this policy after two years from the time when the right of action shall accrue unless otherwise provided by the law of the State of the contract."

Such contractual limitation is valid. Guthrie v. Connecticut Indemnity Association, 101 Tenn., 643, 49 S. W., 829; Couch on Insurance, vol. 7, sec. 1629, p. 5701; Joyce on Insurance (2 Ed.), vol. 5, sec. 3181, p. 5346; Cooley's Briefs on Insurance (2 Ed.), vol. 7, p. 6800. And it is not "otherwise provided" by the law of Tennessee (the "State of the contract"), for the policy here involved is an "Industrial Policy," and such policies are excepted from the provisions of section 6180 of the Code, which forbids (in life insurance policies) "a provision limiting the time within which any action at law or in equity may be commenced to less than five years after the cause of acton shall accrue." See Johnson v. Life & Casualty Insurance Co., 168 Tenn., 358, 79 S. W. (2d), 39; Public Acts of 1937, Chapter 270.

 We are unable to concur in the opinion of the learned trial judge that "the defendant Company holds the sums paid and calculated under the table of calculation for paid-up insurance as a trustee for the beneficiary, and that the contractual limitation for bringing suit has no application to this 'Non-forfeiture privilege.'" No authority is cited by the trial court or counsel for the construction thus placed upon the policy-contract; but, of course, the omission of citation of authority is not controlling.

However, a careful scrutiny of the policy discloses nothing which, in our opinion, either expressly or by reasonable implication, establishes a *trust relation* between the insurer and the beneficiary. "In the absence of contract or statutory provision therefor, no right to claim a paid-up policy exists against the insurer, nor is it obligated to issue one." Couch on Insurance, vol. 3, sec. 641, p. 2073.

The relations of the parties created by the policy here in question are purely *contractual.* The promise of the company to pay (upon the happening of the contingencies stated in the aforesaid paid-up policy provision) "a reduced amount in accordance with" the table quoted on the "reverse side" of the policy, is as much a part of the contract of insurance as the company's promise to pay the principal

sum named in the face of the policy upon the conditions therein stated. See Dempsey v. John Hancock Mut. Life Insurance Co. (Mo. App.), 248 S. W., 17, 18; Bothmann v. Metropolitan Life Insurance Co. (Mo. App.), 231 S. W., 1007, 1011.

Although the case of Mills v. National Life & Accident Insurance Co., 136 Tenn., 350, 189 S. W., 691, did not involve the statute of limitations, the reasoning of the opinion in that case indicates that the court regarded the provisions for "paid-up" or "extended" insurance contained in the "non-forfeiture" clause of the policy as a part of the *insurance contract* embraced in the policy.

It follows from our interpretation of the policy now before us, as hereinbefore stated, that the present suit was a suit brought or action commenced against defendant company "under this policy," and falls within the aforesaid contractual limitation of two years. Where the fact of death depends upon the presumption arising from an unexplained absence of more than seven years, the general rule is that the cause of action accrues at the expiration of the seven-year period (which in the instant case was in September or October, 1934). See Couch on Insurance, vol. 8, sec. 2228, pp. 7227-7229; Notes: 26 L. R. A. (N. S.), 294, and L. R. A., 1915B, 756. The present record discloses no facts from which death may be presumed in less than seven years, as was the case in Ballinger v. Connecticut Mutual Life Insurance Co., 167 Tenn., 367, 69 S. W. (2d), 1090. However, as the present action was not commenced until March 20, 1939—more than four years after the expiration of the seven-year period—it was barred.

▆▆ In his written opinion, the learned trial judge seemed to attach controlling importance to the clause "the Company will, *without action on the part of the holder*, continue this policy as a paid-up policy," as that clause appears in the "Paid-up Policy" provision, quoted supra. His view was that "this plaintiff was the holder," and that "the word 'action' would mean and include an 'action' to recover on this policy by judicial proceedings."

To thus construe the clause thus quoted in the last preceding paragraph would be equivalent to treating it as though it read: the company will, without judicial proceedings on the part of the holder to compel the company to do so, continue this policy (indefinitely) as a paid-up policy.

An expressed stipulation in a contract that one of the contracting parties will perform an obligation assumed by him in the contract, *without judicial proceedings on the part of the other party to compel him to do so,* would be superfluous.

We think the words "without action on the part of the holder" mean without *demand* or *election* on the part of the holder as frequently required by the terms of life insurance policies providing options to the owner of the policy in such circumstances. See Couch on Insurance, vol. 3, secs. 641, 641a.

Moreover, it should be observed that there is no contention in the instant case that the policy did not continue as a paid-up policy, after default in the payment of premiums, until the death of the insured, when it became *payable on the same conditions as the policy.* The present action is to enforce *payment* of the value of the "paid-up" policy, and one of the conditions of the policy is that "no suit shall be brought nor action commenced against this Company under this policy after two years from the time when the right of action shall accrue."

It results that the defendant's assignments of error through which it complains of the findings and judgment of the trial court that the paid-up value of the policy sued on was a trust fund, and that the contractual limitation of two years provided in the policy did not bar plaintiff's action to recover same, are sustained; and the remaining assignments of error are overruled.

For the errors indicated, supra, the judgment of the Circuit Court is reversed and vacated, and the plaintiff's suit is dismissed, and judgment will be entered here accordingly.

The costs of the cause, including the costs of the appeal, will be adjudged against the plaintiff Kittie Grizzard.

Crownover and Felts, JJ., concur.